UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA                          :
                                                             :      Case No. 17-cr-00684-ER
v.                                                            :
                                                             :      ECF Case
LAMONT EVANS                                       :
EMANUEL RICHARDSON, a/k/a "Book,"    :
ANTHONY BLAND, a/k/a "Tony,"             :
CHRISTIAN DAWKINS, and                       :
MERL CODE,                                          :
                                                             :
      Defendants.                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
JOINT MOTION TO SUPPRESS WIRETAP EVIDENCE
AND FOR ADDITIONAL INFORMATION CONCERNING
THE PRESENTMENT OF THOSE INTERCEPTIONS TO THE GRAND JURY**

**NEXSEN PRUET LLC**
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211
*Attorneys for Defendant Merl Code*

**LAW OFFICES OF JEFFREY LICHTMAN**
Jeffrey B. Einhorn
Jeffrey Lichtman
11 E. 44th Street, Ste. 501
New York, New York 10017
(212) 581-1001
*Attorneys for Defendant Anthony "Tony" Bland*

**HANEY LAW GROUP PLLC**
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470
*Attorneys for Defendant Christian Dawkins*

**MORDOCK BARBER, LLC**
Craig J. Mordock
7611 Maple Street, Suite A3
New Orleans, Louisiana 70118
(504) 304-2335
*Attorneys for Defendant Emanuel "Book" Richardson*

**BARNES AND THORNBURG, LLP**
William R. Martin
1717 Pennsylvania Ave
Suite 500
Washington, DC 20006
(202) 465-8422
*Attorneys for Defendant Lamont Evans*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 3

    A.    Generally ..................................................................................................................... 3

    B.    The April 7 Wiretap Order ......................................................................................... 4

    C.    The April 7 Wiretap Application ................................................................................ 5

STANDARD OF REVIEW ......................................................................................................... 7

ARGUMENT ............................................................................................................................... 9

    A.    The Defendants Have Standing to Challenge All Wiretap Orders................................. 9

    B.    The Communications Intercepted Pursuant to the April 7 Wiretap Order Should be Suppressed Because the April 7 Wiretap Order is Facially Insufficient. ................................ 10

    C.    The Communications Intercepted Pursuant to the April 7 Wiretap Order Should Likewise be Suppressed Because the April 7 Wiretap Order was not Supported by Probable Cause to Believe That any of the Targets Were Committing a Target Offense. ..................... 17

    D.    Given Mr. Blazer's Cooperation, the Wiretap Orders Were Unnecessary and, Therefore, Unlawful. ........................................................................................................................... 20

    E.    Communications Intercepted Pursuant to Subsequent Wiretap Orders are Derivative Evidence That Must be Suppressed. ........................................................................................ 23

    F.    Defendants are Entitled to the Transcripts of the Grand Jury's Proceedings Because the Indictment Against Them may be Based Upon Communications Obtained Pursuant to the April 7 Wiretap Order and the Subsequent Wiretap Orders. ................................................... 25

CONCLUSION ............................................................................................................................. 26

## TABLE OF AUTHORITIES

Cases

*Berger v. State of New York*,
 388 U.S. 41, 64 (1967) ................................................................................................ 7

*Dalia v. United States*,
 441 U.S. 238, 250 (1979) ............................................................................................ 21

*Franks v. Delaware*,
 438 U.S. 154, 98 S. Ct. 2674 (1978) .......................................................................... 26

*Gelbard v. United States*,
 408 U.S. 41, 46 (1972) ................................................................................................ 8

*Illinois v. Gates*,
 462 U.S. 213, 230–32 (1983) ...................................................................................... 17

*In re United States in Order Authorizing the Use of a Pen Register*,
 416 F. Supp. 800, 802 n.4 (S.D.N.Y. 1976) ............................................................... 24

*Katz v. United States,*
 389 U.S. 347, 358 (1967) ............................................................................................ 7

*People v. Jacobs*,
 130 N.E.2d 636, 637 (N.Y. 1955) ......................................................................... 19, 20

*Skilling v. United States*,
 561 U.S. 358, 400 (2010) ............................................................................................ 18

*U.S. v. Scurry*,
 821 F.3d 1, 10 (D.C. Cir. 2016) ......................................................................... passim

*United States v. Acon*,
 513 F.2d 513, 516-19 (3d Cir. 1975) .......................................................................... 15

*United States v. Bianco*,
 998 F.2d 1112, 1125 (2d Cir. 1993) .......................................................................... 8, 9

*United States v. Blackmon*,
 273 F.3d 1204, 1207 (9th Cir. 2001) ........................................................................... 20

*United States v. Callum*,
 410 F.3d 571, 576 (9th Cir. 2005) ................................................................... 10, 15, 16

ii

*United States v. Chavez,*
    416 U.S. 562, 571-72, 94 S.Ct. 1849, 1851 (1974) .......................................................... passim

*United States v.*
    *Cirillo,* 499 F.2d 872, 878 n.3 (2d Cir. 1974) ......................................................... 17

*United States v. Concepcion,*
    579 F.3d 214, 218 (2d Cir. 2009) ......................................................................... 20, 21

*United States v. Diaz,*
    176 F.3d 52, 110 (2d Cir. 1999) ........................................................................... 17

*United States v. Figueroa,*
    757 F.2d 466, 471 (2d Cir. 1985) ......................................................................... 8, 24

*United States v. Fury,*
    554 F.2d 522, 530 (2d Cir. 1977) ......................................................................... 17

*United States v. Geibel,*
    369 F.3d 682, 699 (2d Cir. 2004) ......................................................................... 19

*United States v. Giordano,*
    416 U.S. 505, 527 (1974) ...................................................................................... passim

*United States v. Glover,*
    736 F.3d 509, 513 (D.C. Cir. 2013) ...................................................... 10, 14, 15, 16

*United States v. Gray,*
    521 F.3d 514, 524-25 (6th Cir. 2008) ................................................................. 15, 16

*United States v. Holden,*
    603 F. App'x 744, 749-50 (11th Cir. 2015) ......................................................... 15

*United States v. Kahn,*
    415 U.S. 143, 153 n.12 (1974) ............................................................................. 21

*United States v. Lambus,*
    251 F. Supp. 3d 470, 489 (E.D.N.Y. 2017) ....................................................... 16, 26

*United States v. Lawson,*
    545 F.2d 557, 562-63 (7th Cir. 1975) ................................................................. 15

*United States v. Lilla,*
    699 F.2d 99, 104 (2d Cir. 1983) ..................................................................... 20, 21, 23

*United States v. Magaddino,*
    496 F.2d 455, 462 (2d Cir. 1974) ........................................................ 25

*United States v. Marion,*
    535 F.2d 697, 701 (2d Cir. 1976) ........................................................ 23

*United States v. New York Tel. Co.,*
    434 U.S. 159, 166 n. 9, 98 S.Ct. 364, 368 (1977) ................................ 24

*United States v. Papadakos,*
    729 F. App'x 41, 44 (2d Cir. 2018) .................................................... 26

*United States v. Radcliff,*
    331 F.3d 1153, 1162 (10th Cir. 2003) ..................................... 11, 15, 16

*United States v. Regan,*
    713 F. Supp. 629, 637 (S.D.N.Y. 1989) .............................................. 18

*United States v. Simels,*
    No. 08-CR-640, 2009 WL 1924746, at *11 (E.D.N.Y. July 2, 2009) ...... 10

*United States v. Starr,*
    816 F.2d 94, 101 (2d Cir. 1987) .......................................................... 18

*United States v. Tane,*
    329 F.2d 848, 854 (2d Cir. 1964) ........................................................ 25

*United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.,*
    407 U.S. 297, 302 (1972) ...................................................................... 8

*United States v. Walters,*
    997 F.2d 1219 (7th Cir. 1993) .............................................................. 18

*Zografidis v. United States,*
    No. 17-9408, 2018 WL 3024150 (U.S. Oct. 1, 2018) ........................... 26

**Statutes**
18 U.S.C. § 1343 ......................................................................................... 3, 20

18 U.S.C. § 1346 ............................................................................................. 3

18 U.S.C. § 1349 ......................................................................................... 3, 20

18 U.S.C. § 1952 ..................................................................................... 3, 20, 21

18 U.S.C. § 2510(11) ...................................................................................... 10

18 U.S.C. § 2515 ............................................................................................ 9, 12, 13, 27

18 U.S.C. § 2516 ................................................................................................ 3, 9, 20

18 U.S.C. § 2518(1)(c) ............................................................................................... 23

18 U.S.C. § 2518(10)(a) ............................................................................................. 10

18 U.S.C. § 2518(10)(a)(ii) .................................................................................. 12, 27

18 U.S.C. § 2518(3) .................................................................................................... 19

18 U.S.C. § 2518(3)(c) ............................................................................................... 23

18 U.S.C. § 371 ...................................................................................................... 3, 20

18 U.S.C. § 666 ...................................................................................................... 3, 20

18 U.S.C. §§ 2510–2520 (1970 ed.) ........................................................................... 8

21 Okl. St. Ann. § 380 ............................................................................................... 22

87 Stat. 197 .................................................................................................................. 8

A.R.S. § 13-2605 ....................................................................................................... 22

Cal. Penal Code § 641.3 ............................................................................................ 22

N.Y. Penal Law § 180.00 .......................................................................................... 22

S.C. Code Ann. § 16-17-540 ..................................................................................... 22

Section 2518(10)(a) ..................................................................................................... 9

Section 2518(10)(a)(ii) .............................................................................................. 11

**Rules**
Rule 6(e)(3)(E)(ii) ........................................................................................................ 3

Defendants Lamont Evans, Emanuel Richardson a/k/a "Book," Anthony Bland a/k/a "Tony," Christian Dawkins, and Merl Code (collectively "Defendants") respectfully submit this memorandum of law in support of their motion to suppress the following: (1) all communications intercepted pursuant to orders issued on April 7, 2017, May 5, 2017, June 19, 2017, July 19, 2017, August 7, 2017, August 22, 2017, August 30, 2017, and September 20, 2017 (the "Wiretap Orders"); and (2) all evidence derived therefrom.

## PRELIMINARY STATEMENT

On April 7, 2017, the District Court issued an Order (the "April 7 Wiretap Order" or "Order") permitting the Government to tap Munish Sood's phone for a period of thirty days and targeting communications with Mr. Dawkins, Mr. Evans, Mr. Richardson, and others.  The April 7 Wiretap Order, however, failed to comply with the statutory requirements of the Federal Wiretap Act (the "Wiretap Act," or "Title III") and, thus, should be suppressed for three reasons.

First, the April 7 Wiretap Order did not identify the Department of Justice official who had authorized the Government's request for a wiretap.  Instead, the Order contained a bracketed placeholder, stating only that the Government's application was "authorized by **[FILL IN]**, Acting Deputy Assistant Attorney General."  As the D.C. Circuit decided in a 2016 case that is directly on point, this failure to identify, by name, the authorizing Justice Department official renders the April 7 Wiretap Order "facially insufficient" under Section 2518(10)(a)(ii) of the Wiretap Act, which further mandates that all communications intercepted pursuant to the facially insufficient Order be suppressed.

Second, the April 7 Wiretap Order was unsupported by probable cause because the facts alleged do not constitute federal crimes. Nothing in the corresponding wiretap application

suggests that Mr. Evans[1] was paid with the specific intent that he act contrary to his duties to

Oklahoma State University. Indeed, Mr. Evans' alleged acceptance of payments was entirely

unconnected to his duties as a basketball coach and Oklahoma State University's business,

generally.

   ***Third***, the April 7 Wiretap Order fails the necessity test because the Government's

confidential informant, Marty Blazer, enticed Mr. Evans into the alleged scheme and recorded all

his conversations with them at law enforcement's direction. The Government's boilerplate

assertions that a wiretap was necessary under these circumstances are nonsensical. In particular,

the Government's conclusory contention that wiretaps were needed to capture other ██████

███████████████ involving Mr. Dawkins is belied by the Government's failure to set forth

any facts, much less probable cause, to believe that any separate schemes existed.

   Consequently, settled law demands the suppression of all communications intercepted

pursuant to the April 7 Wiretap Order, as well as all evidence derived therefrom. Moreover,

because subsequent wiretaps were authorized based on the communications intercepted pursuant

to the invalid April 7 Wiretap Order, all interceptions obtained pursuant to the subsequent

Wiretap Orders constitute "derivative evidence" that should be suppressed.

   In addition, to the extent the communications intercepted pursuant to the invalid April 7

Wiretap Order, or the fruits thereof, were presented to the Grand Jury which indicted Defendants,

---

[1]  As detailed below, when the April 7 Wiretap Order was issued, the Government acknowledged that it was not privy to any ███████████████████ involving Mr. Richardson or Mr. Dawkins, and that one of the reasons it sought to wiretap Mr. Sood's phone was to capture ████████████ involving Mr. Dawkins. In addition, neither Mr. Code nor Mr. Bland were specific targets when the April 7 Wiretap Order was issued. Rather, they were specifically targeted in subsequent wiretap applications, which included a combination of the original facts alleged in the initial application and communications that should never have been intercepted.

the Indictment against Defendants should be dismissed.  Accordingly, Defendants move this

Court under Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure for an Order

authorizing the disclosure of the transcripts of the Grand Jury's proceedings in this matter, so that

they may assess whether the Indictment against them was tainted by the illegal wiretap and they

should seek its dismissal.

## FACTUAL BACKGROUND

### A.      Generally

On April 7, 2017, the Government submitted an application to the District Court seeking

to tap the cellular phone of Munish Sood for a thirty-day period (the "April 7 Wiretap

Application").  (*See* Ex. 1).  The Government's April 7 Wiretap Application specifically

targeted Mr. Dawkins, Mr. Evans, Mr. Richardson, and others.[2]  The target offenses, which

remained identical in each of the subsequent wiretap applications, were wire fraud, 18 U.S.C. §

1343, conspiracy to commit wire fraud, 18 U.S.C. § 1349, violation of the Travel Act, 18

U.S.C. § 1952, and conspiracy to violate the Travel Act, 18 U.S.C. § 371.[3]  (*Id.* at

SDNY_00007705).  Notably, the Government acknowledged to the Court that it was "



" and that one of the reasons it sought to wiretap Mr. Sood's phone was to "

" (Ex. 1 at SDNY_00007784)

---

[2]      Mr. Bland and Mr. Code were first specifically targeted in subsequent wiretap
applications dated June 19, 2017 and July 19, 2017, respectively. However, as detailed
previously, those wiretap applications included a combination of the original facts alleged in the
April 7 Wiretap Application and communications that should never have been intercepted.

[3]      The Government noted that federal funds bribery, 18 U.S.C. § 666 was not a target
offense because it is not defined as a predicate offense under 18 U.S.C. § 2516. (*Id.* at
SDNY_00007705 n.1.) In addition, the Government did not even allege honest services wire
fraud, 18 U.S.C. § 1346, as a target offense, which further lends credence to Defendants'
position that the conduct charged does not constitute a federal crime.

(emphasis added).  The Government's wiretap request was granted on the same day it was

submitted.  (*See* Ex. 2 (the "April 7 Wiretap Order")).

### B.      The April 7 Wiretap Order

The April 7 Wiretap Order failed to identify the Department of Justice official who

authorized the Government's application for a wiretap, as required by the Wiretap Act. Instead,

the Order stated: "████████████████████████████████████████

██████████."  (Ex. 2 at SDNY_00007807 (emphasis added)).  Despite this deficiency,

interception of Mr. Sood's cellular phone communications began on or about April 8, 2017.

The Government's subsequent wiretap applications relied upon communications

obtained via the April 7 Wiretap Order.  On May 5, 2017, the Government submitted an

application for an extension of the April 7 Wiretap Order.  (Ex. 3 (Government's May 5, 2017

extension application)).  Almost twenty pages of this extension application were devoted to a

description of calls that had been intercepted pursuant to the April 7 Wiretap Order, including

calls between Mr. Sood and Mr. Dawkins.  *Id.* at SDNY_00007952-70.  The requested

extension was granted on May 5, 2017.  (*See* Ex. 4 (May 5 Order)).

The communications intercepted pursuant to the April 7 Wiretap Order were also relied

upon by the Government in its applications for several subsequent wiretaps of Mr. Dawkins's

and Mr. Richardson's cell phones.[4]  (Ex. 5 (Government's June 19, 2017 application) at

SDNY_00008138-55 (recounting calls obtained via the April 7 Wiretap Order), *granted* June

19, 2017 (Ex. 6); *see also* Ex. 7 (Government's July 19, 2017 renewal application) at

SDNY_00008342-59 (recounting calls obtained via the April 7 Wiretap Order), *granted* July 19,

2017 (Ex. 8); Ex. 11 (Government's August 22, 2017 application), at SDNY_00009145-62

---

[4]      Mr. Richardson's cell phone was specifically targeted in the Government's July 19, 2017
and August 22, 2018 applications.

(recounting calls obtained via the April 7 Wiretap Order), *granted* August 22, 2017 (Ex. 12); *see also* Ex. 15 (Government's September 20, 2017 renewal application), at SDNY_00009447-65 (recounting calls obtained via the April 7 Wiretap Order), *granted* September 20, 2017 (Ex. 16)).

Likewise, the communications intercepted pursuant to the April 7 Wiretap Order were relied upon by the Government in subsequent applications for wiretaps of Mr. Code's cell phone. (*See* Ex. 9 (Government's August 7, 2017 application) at SDNY_00008584-01 (recounting calls obtained via the April 7 Wiretap Order), *granted* August 7, 2017 (Ex. 10); *see also* Ex. 13 (Government's August 30 application) at SDNY_00008852-70 (recounting calls obtained via the April 7 Wiretap Order), *granted* August 30, 2017 (Ex. 14)).

### C.      The April 7 Wiretap Application

The April 7 Wiretap Application was supported by the Affidavit of FBI Special Agent Jason Wake (the "April 7 Affidavit"), which described the Government's investigation into allegations of bribery schemes in men's college basketball. (Ex. 1 at SDNY_00007737.) Despite its conclusory assertion of a wide-ranging investigation, the April 7 Affidavit alleged only a single, distinct scheme: government informant Mr. Blazer, a business manager and financial advisor to professional athletes, had offered to pay money to Mr. Evans supposedly on the understanding that Mr. Evans would refer college basketball players to Mr. Blazer to engage the services of Mr. Blazer if and when they entered the NBA.[5] (Ex. 1 at SDNY_00007742). The April 7 Affidavit did not allege any legitimate reason, let alone probable cause, to believe that Mr. Evans was or had been engaging in any other similar conduct or in any other scheme.[6]

---

[5]      The April 7 Affidavit refers to Mr. Blazer as "CW-1."

[6]      With respect to Mr. Dawkins, the facts alleged in the April 7 Affidavit merely demonstrate that Mr. Dawkins introduced Mr. Blazer to Mr. Evans. To the extent that Mr.

As reflected by the April 7 Affidavit, Mr. Blazer's cooperation played a vital role in the Government's investigation. Indeed, the Government built its entire case against Mr. Evans upon the cooperation of Mr. Blazer. Mr. Blazer, working at the direction of law enforcement, allegedly made several payments to Mr. Evans. In exchange, Mr. Evans allegedly facilitated a meeting between Mr. Blazer and one Oklahoma State University basketball player, Jeffrey Carroll, for the purpose of allowing *Mr. Blazer* to influence Mr. Carroll to retain his services when he became a professional athlete.  In addition, for months, Mr. Blazer surreptitiously recorded telephone calls, captured text messages, and recorded in-person meetings with several individuals – all at law enforcement's direction – to aid in the Government's investigation.

Notwithstanding Mr. Blazer's established ability to lure Mr. Evans (and Mr. Dawkins) into the Government's net, the April 7 affidavit asserted that the Government's usual investigative procedures were insufficient to achieve the objectives of the investigation. (See Ex. 1 at SDNY_00007784). Although the April 7 Affidavit purported to establish this proposition with boilerplate language, it actually provided no meaningful support for its assertion that normal investigative procedures had proven inadequate to investigate the alleged scheme for Mr. Blazer to pay Mr. Evans in exchange for Mr. Evans introducing players to Mr. Blazer. Instead, the April 7 Affidavit focused on the need for wiretaps to uncover additional, ███████████ ███████████ involving Mr. Dawkins. (*See Id.* at SDNY_00007784.) In other words, while Mr. Blazer had been an effective tool for purposes of setting up and investigating the scheme actually

Dawkins is alleged to have been complicit in the scheme detailed within the April 7 Affidavit, which he vehemently denies, Mr. Blazer entrapped Mr. Dawkins into the alleged scheme by suggesting the idea of paying college basketball coaches when Mr. Dawkins did not originally intend to do so. Moreover, to the extent Mr. Code is alleged to have later become complicit in this scheme, which he likewise denies, the aforementioned entrapment argument applies with equal force to Mr. Code.

alleged in the April 7 Wiretap Application, the Government sought to tap the cell phone of Mr.

Sood in the hope of uncovering other schemes that it had **no legitimate reason, much**

**less** probable cause, to believe existed.[7]

## STANDARD OF REVIEW

A wiretap is "the greatest of all invasions of privacy." *Berger v. State of New York*, 388 U.S.

41, 64 (1967) (Douglas, J., concurring). "It places a government agent in the bedroom, in the

business conference, in the social hour, in the lawyer's office – everywhere and anywhere a 'bug'

can be placed." *Id.* at 64–65. Given the seriously intrusive nature of a wiretap, the Supreme Court

held in *Berger* that a statute authorizing electronic surveillance violated the Fourth Amendment

because it lacked "adequate judicial supervision or protective procedures." 388 U.S. at 60. Then,

in *Katz v. United States,* 389 U.S. 347, 358 (1967), the Court overruled its prior decisions that had

limited the Fourth Amendment's reach to physical trespasses, and held that the Fourth

Amendment requires "advance authorization by a magistrate upon a showing of probable cause"

to conduct electronic surveillance of a telephone conversation. *See* 389 U.S. 347, 358 (1967).

In response to *Berger* and *Katz*, Congress enacted Title III of the Omnibus Crime Control

and Safe Streets Act of 1968, 87 Stat. 197, 18 U.S.C. §§ 2510–2520 (1970 ed.) ("Title III").

"Title III was enacted, in large part, to meet the restrictions imposed on electronic surveillance

practices and procedures by *Berger* and *Katz*." *United States v. Figueroa*, 757 F.2d 466, 471 (2d

Cir. 1985); *see also United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297,

---

[7]     As detailed above, the April 7 Wiretap Application did not target Mr. Code or Mr. Bland,
and the April 7 Affidavit acknowledged that the Government was not privy to any ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮ involving Mr. Richardson or Mr. Dawkins at that time. Assuming
*arguendo*, however, that the Government was privy to similar communications regarding Mr.
Richardson or Mr. Bland, the argument detailed above on behalf of Mr. Evans would apply with
equal force to Mr. Richardson and Mr. Bland.

302 (1972). Recognizing that a wiretap is an "extraordinary investigative device," *United States v. Giordano*, 416 U.S. 505, 527 (1974), "Title III authorizes the interception of private wire and oral communications, but only when law enforcement officials are investigating specified serious crimes and receive prior judicial approval, ***an approval that may not be given except upon compliance with stringent conditions.***" *Gelbard v. United States*, 408 U.S. 41, 46 (1972) (emphasis added).

Among Title III's stringent conditions is Section 2518's requirement that every court order authorizing a wiretap specify "the identity of . . . the person authorizing the [Government's wiretap] application" (the "identification requirement").[8] The Supreme Court has explained that the purpose of this identification requirement was to "make clear who bore the responsibility for approval of the submission of a particular wiretap application." *United States v. Chavez*, 416 U.S. 562, 571-72, 94 S.Ct. 1849, 1851 (1974).  Congress reasoned that if the Attorney General (or one of the other specified Justice Department officials) was required to be "individually identified as having approved the [wiretap] application," that official would "make doubly sure that the statutory [wiretap] authority be used with restraint." *U.S. v. Scurry*, 821 F.3d 1, 10 (D.C. Cir. 2016) (quoting *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 1826-27 (1974)).

In addition, "Title III contains its own exclusionary rule." *United States v. Bianco*, 998 F.2d 1112, 1125 (2d Cir. 1993). No intercepted communications "and no evidence derived therefrom may be received in evidence in any trial . . . if the disclosure of that information would

---

[8]     Under Section 2516 of the Wiretap Act, only "the Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General . . . specially designated by the Attorney General" may authorize a wiretap application to be submitted to the court.  18 U.S.C. § 2516(1).

be in violation of [Title III]." 18 U.S.C. § 2515. Section 2518(10)(a) sets forth three "specific grounds for exclusion under § 2515." *Bianco*, 998 F.2d at 1125. The specific grounds for exclusion are: "(i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a). Because Title III contains its own, statutory exclusionary rule, suppression is "not limited to constitutional violations"; rather, suppression is required whenever "there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *Giordano*, 416 U.S. at 527.

## ARGUMENT

### A.  The Defendants Have Standing to Challenge All Wiretap Orders.

Under Title III, any "aggrieved person" has standing to challenge a wiretap order. 18 U.S.C. § 2518(10)(a). An "aggrieved person" with standing to move for suppression is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11).

Here, as parties to intercepted communications and as persons against whom interception was directed, the Defendants have standing to challenge the Wiretap Orders under Title III.[9]

---

[9]   Although Mr. Code and Mr. Bland were not specifically targeted in the April 7 Wiretap Order, the wiretap orders in which they were specifically targeted relied on the April 7 Wiretap Order. To the extent the Court questions Mr. Code or Mr. Bland's standing, that issue will be primarily addressed at oral argument by counsel for Mr. Evans, Mr. Richardson, and Mr. Dawkins, as they were specific targets of the April 7 Wiretap Order.

**B.     The Communications Intercepted Pursuant to the April 7 Wiretap Order
Should be Suppressed Because the April 7 Wiretap Order is Facially
Insufficient.**

When a defendant moves for suppression under Section 2518(10)(a)(ii), a court must first

determine if the wiretap order is "facially insufficient." *United States v. Glover*, 736 F.3d 509,

513 (D.C. Cir. 2013).  The D.C. Circuit recently held that when a wiretap order is found to be

facially insufficient under Subsection (ii), "[s]uppression is the mandatory remedy" and "[t]here is

no room for judicial discretion." *Glover*, 736 F.3d at 513; *Scurry*, 821 F.3d at 8, 13-14.[10]  To

determine whether a wiretap order is facially insufficient, the court "must examine the four

corners of the [wiretap] order and establish whether, on its face, it contains all that Title III

requires it to contain." *Scurry*, 821 F.3d at 8 (citing *Chavez*, 416 U.S. at 573-74, 94 S.Ct. at

1855-56 and *United States v. Giordano*, 416 U.S. 505, 525 n.14, 94 S.Ct. 1820, 1831 (1974)).  If

the wiretap order does not comply with each of the statutory requirements of Title III, it is

"insufficient on its face." *Id*.; *see also United States v. Simels*, No. 08-CR-640, 2009 WL

1924746, at *11 (E.D.N.Y. July 2, 2009) (a wiretap order is "facially sufficient" only where "on

the basis of the information that appears on its face, it could reasonably be believed that it meets

all the statutory requirements").

Where a wiretap order fails to identify, by name, the Justice Department official who

authorized the Government's wiretap application, the wiretap order is "facially  insufficient."

*Scurry*, 821 F.3d at 8; *Giordano*, 416 U.S. at 525 n.14, 94 S.Ct. at 1831 (noting that a wiretap

order is "insufficient on its face" when the court "fail[s] to identify at all in the interception order

the person who authorized the application."); *see also United States v. Callum*, 410 F.3d 571, 576

(9th Cir. 2005) (wiretap order was "facially insufficient" where order "listed no one at all" in

---

[10]     The Second Circuit has not yet had the opportunity to address this issue.

10

place of authorizing Justice Department official); *United States v. Radcliff*, 331 F.3d 1153, 1162 (10th Cir. 2003) (wiretap order was "facially insufficient" where authorizing official was not identified by name). Once a wiretap order is found to be "insufficient on its face" under Subsection  (ii), Title III provides that any intercepted communications and "evidence derived therefrom" may not be "received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other  authority of the United States."  18 U.S.C. § 2515 (suppression remedy applies to any communication that has been intercepted "in violation of" the statute).

Here, The April 7 Wiretap Order is "facially insufficient" because it fails to identify the Department of Justice official who authorized the Government's application, as required by Section 2518(4)(d) of Title III.  Instead, the Order states:  "█████████████████ █████████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████."  (Ex. 2 at SDNY_00007807 (emphasis added)).  The April 7 Wiretap Order's failure to comply with Title III requires that all communications intercepted pursuant to the Order be suppressed.  18 U.S.C. § 2518(10)(a)(ii); 18 U.S.C. § 2515.

The D.C. Circuit's decision in *United States v. Scurry* is directly on point.  In *Scurry*, the Government obtained two wiretap orders, each of which stated: "this application [was] authorized by * * * * * *, Deputy Assistant Attorney General of the Criminal Division," with asterisks in place of the name of the authorizing Justice Department official.  821 F.3d at 8. The Government's applications, however, had identified those officials by name.  *Id*.  The defendants in *Scurry* moved to suppress the calls that had been intercepted pursuant to the two

11

orders, arguing that the orders were "facially insufficient" because they violated Title III's identification requirement.  *Id.* at 10.  The district court agreed that the two wiretap orders were "facially insufficient," but nevertheless concluded that suppression was not warranted.  *Id*. at 8. The district court reasoned that because the Government's wiretap ***applications*** had identified, by name, the Justice Department officials who approved the Government's wiretap requests, the failure in the wiretap ***orders*** to identify those authorizing officials was merely a "technical defect" that did not merit suppression.  *Id*.

On appeal, the D.C. Circuit reversed.  *Id.* at 13-14.  As a threshold matter, the D.C. Circuit confirmed that there was "little question that each of the . . . orders is 'insufficient on its face' because each fails to include information expressly required by Title III," *i.e.*, the identity of the Justice Department official who had approved the Government's request for a wiretap. *Id*. at 8.  While the Government argued that a wiretap order is "not facially insufficient" even where "essential information required by Title III is missing from the order," so long as "other materials" submitted to the court supplied the missing information, *id*. at 9, the D.C. Circuit rejected the Government's argument.

The D.C. Circuit explained that Title III's facial insufficiency inquiry "is limited to the four corners of the wiretap order" and for that reason, the information in the Government's applications was irrelevant.  *Id*.  The Court explained that Congress outfitted Title III with two separate statutory identification requirements:  (1) an "***application*** identification requirement," found in Section 2518(1)(a), which requires the Government to identify the authorizing Justice Department in its application for a wiretap; and (2) an "***order*** identification requirement," found in Section 2518(4)(d), which requires every wiretap order issued by a court to identify the approving Justice Department official.  *Id*. (emphasis in original).  The D.C. Circuit explained

that the Government's citation to its wiretap applications was insufficient because if Title III's "***order*** identification requirement" could be met by "satisfying [Title III's] ***application*** identification requirement," that would "effectively render" the order identification requirement in Section 2518(4)(d) "superfluous."  *Id*. (emphasis in original) ("There is something incongruous about an interpretation that would let extrinsic documents transform an order that is 'insufficient on its face' into one that is sufficient 'on its face.'").

  Moreover, the D.C. Circuit further explained that it is the wiretap ***order***, not the Government's application, that acts as the "operative field document" for the "field agents or telecommunications service providers" responsible for effectuating the wiretap, and for that reason, the order itself must identify the authorizing Justice Department official by name.  *Id*. at 11.  The D.C. Circuit explained that at the time of Title III's passage, Congress did not want "field agents or telecommunications service providers to conduct or assist in conducting wiretaps unless they — like the judge who authorized the wiretap — could satisfy themselves of proper compliance with section 2516(1)'s application pre-approval requirement."  *Id*. ("[B]y tying immunity to good-faith reliance on a court order . . . Congress created an incentive for field agents and service providers to examine a wiretap order for completeness, including the identity of the authorizing Justice Department official").  Title III's identification requirement is not a technicality but rather an example of Congress's desire to implement "critical check[s] on the overuse or misuse of wiretapping authority."  *Id*. (citing *Giordano*, 416 U.S. at 516, 528, 94 S.Ct. at 1827).  Accordingly, after considering both the legislative history of Title III and the plain language of the statute, the D.C. Circuit squarely held: "a wiretap order is insufficient on its face where it fails to identify the Justice Department official who approved the underlying application, as required by Title III."  *Id.* at 5 (internal quotations and citations omitted).

The D.C. Circuit went on to confirm that because the wiretap orders in *Scurry* were "facially insufficient," the "only appropriate remedy [was] suppression" of the calls intercepted pursuant to those orders. *Id*. at 13; *Glover*, 736 F.3d at 513. In so holding, the Circuit rejected the Government's argument that the insufficiency was only a "technical defect" that did not merit suppression. *Scurry*, 821 F.3d at 13.

As the *Scurry* court acknowledged, there is currently a Circuit split, arising out of the interpretation of the Supreme Court's decision in *Chavez*, regarding whether suppression is mandatory for a Subsection (ii) violation. The Second Circuit has not yet decided the issue. In *Chavez*, the Supreme Court reviewed a wiretap order that named Acting Assistant Attorney General Will Wilson as the authorizing official, although the order had actually been authorized by the Attorney General. 416 U.S. at 573-74, 94 S.Ct. at 1855-56. The defendant argued first that the order was facially insufficient under Subsection (ii) and second that it was unlawful under Subsection (i). The Supreme Court held that the order was facially ***sufficient*** under Subsection (ii) because it "identified on its face" the name of an authorizing Justice Department official, albeit not the one who had actually approved the Government's application. *Id.*; *see also Giordano*, 416 U.S. at 525 n.14, 94 S.Ct. at 1831 (where an "order, on its face, clearly though erroneously, identified . . . the Justice Department officer authorizing the application . . . the intercept order was facially sufficient" under Subsection (ii)).

The Supreme Court also rejected the defendant's argument for suppression under Subsection (i), holding that the misidentification defect in the wiretap order did not implicate Title III's core concerns, a showing that is necessary in order to suppress under Subsection (i). *Chavez,* 416 U.S. at 574-75, 94 S.Ct. at 1855-56; *see also Giordano*, 416 U.S. at 527, 94 S.Ct. at 1832-33 (explaining that while an "infringement" of a Title III requirement requires suppression

under Subsection (ii), it can also merit suppression under Subsection (i) if the statutory requirement that was violated "directly and substantially implement[s]" Title III's core concerns).  But, even though the Supreme Court articulated this "core concerns" test "specifically with respect to motions to suppress under [Subsection (i)]," a number of Circuit courts later applied it to motions to suppress under Subsection (ii).  *Radcliff*, 331 F.3d at 1162; *see also United States v. Holden*, 603 F. App'x 744, 749-50 (11th Cir. 2015); *United States v. Lawson*, 545 F.2d 557, 562-63 (7th Cir. 1975); *United States v. Acon*, 513 F.2d 513, 516-19 (3d Cir. 1975).  The Government relied on cases from these Circuits in *Scurry*, to argue that even in instances where an order is facially insufficient because it fails to identify the authorizing Justice Department official, that defect does not implicate the "core concerns" of Title III so long as the Government's applications include the missing information.  *Scurry*, 821 F.3d at 13 (noting Government's "misplaced" reliance on "out of circuit" cases that apply the "core concerns" test to Subsection (ii) violations, *e.g., Callum*, 410 F.3d at 574-76; *United States v. Gray*, 521 F.3d 514, 524-25 (6th Cir. 2008)).  The D.C. Circuit rejected the Government's argument.

The D.C. Circuit explained in *Scurry* that it has not "import[ed] the 'core concerns' test into the facial-insufficiency context" because it strives to be "faithful to both Supreme Court precedent and the text of Title III."  821 F.3d at 13.  In *United States v. Glover*, decided in 2013, the D.C. Circuit explained that to "apply[] the 'core concerns' test to [Subsection (ii)] would turn the Supreme Court's approach [in *Chavez* and *Giordano*] on its head, elevating policy over text." 736 F.3d at 513-14 ("applying the 'core concerns' test to [Subsection (ii)] would actually treat that paragraph as 'surplusage'—precisely what the Supreme Court tried to avoid").

Indeed, even those Circuits that have read the Supreme Court's "core concerns" test into Subsection (ii) acknowledge that doing so "goes a step farther" than the Supreme Court has ever

15

suggested. *Callum*, 410 F.3d at 574-76  (explaining that while *Giordano* and *Chavez* stand for

the proposition that a wiretap order can list an "incorrect" DOJ official "without creating a facial

insufficiency," it is Ninth Circuit precedent, not that of the Supreme Court, that has held that

there are "facial insufficienc[ies]" that "do[] not call for suppression"); *Gray*, 521 F.3d at 524-25

(agreeing that the Supreme Court has "never reached" the issue of how to treat a wiretap order

that omits the name of the authorizing Justice Department official); *Radcliff*, 331 F.3d at 1162

(agreeing that the Supreme Court has only endorsed the core concerns test in the context of

Subsection (i) suppression motions).  On their face, the Supreme Court's decisions stand for the

proposition that suppression motions under Subsection (i) require a "broad inquiry into the

government's intercept procedures to determine whether the government's actions transgressed

the core concerns of the [wiretap] statute," whereas motions to suppress under Subsection (ii)

require only "a mechanical test; either the warrant is facially sufficient or it is not."[11]  *Glover*,

736 F.3d at 513; *see also United States v. Lambus*, 251 F. Supp. 3d 470, 489 (E.D.N.Y. 2017)

(Weinstein, J.) (citing *Glove*r for the proposition that "suppression is the mandatory remedy

when evidence is obtained pursuant to a facially insufficient warrant.  There is no room for

judicial discretion.").

This case is on all fours with *Scurry*.  As in *Scurry*, the lack of an authorizing official's

name in the April 7 Wiretap Order renders the Order "facially insufficient" and requires that the

---

[11]    If the Court elects to graft the Subsection (i) "core concerns" test onto its analysis under Subsection (ii), despite the D.C. Circuit's reasoning in *Glover* and *Scurry*, suppression is still required here because the April 7 Wiretap Order's failure to identify an authorizing Justice Department official implicates a "core concern" of Title III.  As the Supreme Court has recognized, Congress, in passing Title III, wanted to "make doubly sure that the statutory wiretap authority be used with restraint." *Giordano*, 416 U.S. at 515, 94 S.Ct. at 1820.  Title III's "order identification" requirement "facilitates additional oversight" by ensuring that "the parties executing the order," not just the courts, can satisfy themselves that the wiretap was properly approved.  *Scurry*, 821 F.3d at 10-11.

recordings intercepted pursuant to that Order be suppressed.[12]

**C.   The Communications Intercepted Pursuant to the April 7 Wiretap Order Should Likewise be Suppressed Because the April 7 Wiretap Order was not Supported by Probable Cause to Believe That any of the Targets Were Committing a Target Offense.**

A wiretap order must be based upon a finding of probable cause to believe "(1) that an individual was committing, had committed, or is about to commit a crime; (2) that communications concerning that crime will be obtained through the wiretap; and (3) that the premises to be wiretapped were being used for criminal purposes or are about to be used or owned by the target of the wiretap." *United States v. Diaz*, 176 F.3d 52, 110 (2d Cir. 1999); *see* 18 U.S.C. § 2518(3). "The standard for probable cause applicable to § 2518 is 'the same as the standard for a regular search warrant.'" *Diaz*, 176 F.3d at 110 (quoting *United States v. Fury*, 554 F.2d 522, 530 (2d Cir. 1977)). Thus, probable cause exists only "if the 'totality-of-the-circumstances' indicate a probability of criminal activity." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 230–32 (1983)).

Here, the April 7 Wiretap Order (and all subsequent Wiretap Orders) specified the following target offenses: wire fraud, 18 U.S.C. § 1343, conspiracy to commit wire fraud, 18 U.S.C. § 1349, violation of the Travel Act, 18 U.S.C. § 1952, and conspiracy to violate the Travel Act, 18 U.S.C. § 371.[13] However, the April 7 Wiretap Order was not supported by probable cause to believe that any target was committing any of the target offenses. Consequently, the

---

[12]   Deficiencies in the original April 7 Wiretap Order taint all subsequent wiretap applications and orders, which included a combination of the original facts alleged in the April 7 Affidavit and communications that should never have been intercepted. *See United States v. Cirillo*, 499 F.2d 872, 878 n.3 (2d Cir. 1974) ("Since the application for these extensions was based on conversations intercepted as a result of the first order, if the first order were invalid, the subsequent extensions would be 'tainted' by the primary illegality.").

[13]   Federal funds bribery, 18 U.S.C. § 666, which has also been charged in this case, is not a predicate offense under Title III. *See* 18 U.S.C. § 2516.

April 7 Wiretap Order was facially insufficient, and all communications intercepted pursuant to it and the subsequent Wiretap Orders, as well as all evidence derived therefrom, should be suppressed.

*First*, the application for the April 7 Wiretap Order did not establish probable cause to believe that an individual was committing, or conspiring to commit, wire fraud. In brief, the theory of wire fraud in this case suffers from the same defects identified by Judge Easterbrook in *United States v. Walters*, 997 F.2d 1219 (7th Cir. 1993). Most fundamentally, the wire fraud statute prohibits only schemes to defraud "in which the victim's loss of money or property supplied the defendant's gain, ***with one the mirror image of the other***." *Skilling v. United States*, 561 U.S. 358, 400 (2010) (emphasis added). Thus, "[w]hile a finding that defendants garnered some benefit from their scheme may be helpful to the jury to establish motive, it cannot be probative of fraudulent intent unless it results, or is contemplated to result, from a corresponding loss or injury to the victim of the fraud." *United States v. Starr*, 816 F.2d 94, 101 (2d Cir. 1987).

Here, the application for the April 7 Wiretap Order established at most that Mr. Evans and Mr. Blazer structured mutually beneficial arrangement ***without any corresponding loss or injury to a victim***. The potential gain to Mr. Evans did not depend upon the Oklahoma State University (a victim alleged in the Indictment) suffering any deprivation of money or property, even if the University was harmed inadvertently. *See, e.g.*, *United States v. Regan*, 713 F. Supp. 629, 637 (S.D.N.Y. 1989) ("The money or property deprivation must be a goal of the plot, not just an inadvertent consequence of it."). Accordingly, a theory of wire fraud based upon these facts is untenable and was not a lawful basis to support a wiretap order.[14]

---

[14]   As detailed above, this argument would apply with equal force to Mr. Richardson, Mr. Bland, and their respective universities if the April 7 Wiretap Application alleged similar conduct on behalf of Mr. Richardson and Mr. Bland.

*Second*, the April 7 Wiretap Order was not supported by probable cause to believe that any individual was violating the Travel Act, 18 U.S.C. § 1952. While the April 7 Wiretap Order did not specify any particular predicate acts, the Indictment in this case alleges the commission of the following misdemeanors in South Carolina, Oklahoma, Arizona, and California: bribery with respect to agents servants, or employees, S.C. Code Ann. § 16-17-540; bribery of fiduciary, 21 Okl. St. Ann. § 380; commercial bribery, A.R.S. § 13-2605; and commercial bribery, Cal. Penal Code § 641.3. These statutes, like the New York commercial bribery statute, require the conferral of a benefit upon an employee, agent, or beneficiary with the intent to influence his conduct in relation to his employer's, principal's, or fiduciary's business, conduct, or affairs. *See* S.C. Code Ann. § 16-17-540; *see also* 21 Okl. St. Ann. § 380; A.R.S. § 13-2605; Cal. Penal Code § 641.3; N.Y. Penal Law § 180.00. The Second Circuit has interpreted this statutory language to mean that "the payment must be made for the purpose of inducing the employee to act contrary to the interest of, and inconsistently with, his duties to his current employer." *United States v. Geibel*, 369 F.3d 682, 699 (2d Cir. 2004) (interpreting New York commercial bribery statute). Accordingly, the quintessential violation of a state commercial bribery statute involves "payment of money to a purchasing agent, to cause him to buy goods for his employer from one vendor rather than from another." *People v. Jacobs*, 130 N.E.2d 636, 637 (N.Y. 1955) (interpreting New York commercial bribery statute).

Nothing in the wiretap applications suggests that Mr. Evans was paid with the specific intent that he act contrary to his duties to Oklahoma State University. To the contrary, Mr. Evans' alleged acceptance of payments from Mr. Blazer was entirely unconnected to his duties as a basketball coach and Oklahoma State University's business, generally. The alleged arrangement plainly contemplated that Mr. Evans would receive payments from Mr. Blazer in

exchange for Mr. Evans referring basketball players to Mr. Blazer once they entered the NBA.

These actions bear no similarity to the commercial bribery case described in *People v. Jacobs*.

Moreover, as with wire fraud, unintended and indirect harm to an employer cannot suffice to

establish criminal liability under a commercial bribery statute. If that were the case, then every

violation of the NCAA rules by a college coach, including otherwise normal and legal conduct

like consuming tobacco while coaching, could be said to be "in relation to his employer's or

principal's affairs." There is no basis for such a sweeping interpretation of federal criminal law.

### D. Given Mr. Blazer's Cooperation, the Wiretap Orders Were Unnecessary and, Therefore, Unlawful.

Because a wiretap is so intrusive, Title III requires a demonstrated showing that a wiretap

is necessary. In particular, the wiretap application must include, among other information, "a full

and complete statement as to whether or not other investigative procedures have been tried and

failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18

U.S.C. § 2518(1)(c). Further, the judge may authorize the wiretap only "if the judge determines

on the basis of the facts submitted by the applicant that," among other requirements, "normal

investigative procedures have been tried and have failed or reasonably appear to be unlikely to

succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). "Taken together, §§ 2518(1)(c)

and (3)(c) require a full and complete statement establishing necessity" of the wiretap. *United*

*States v. Blackmon*, 273 F.3d 1204, 1207 (9th Cir. 2001). The Second Circuit has "emphasized

that 'generalized and conclusory statements that other investigative procedures would prove

unsuccessful' will not satisfy Title III." *United States v. Concepcion*, 579 F.3d 214, 218 (2d Cir.

2009) (quoting *United States v. Lilla*, 699 F.2d 99, 104 (2d Cir. 1983)).

This requirement of necessity is "designed to assure that wiretapping is not resorted to in

situations where traditional investigative techniques would suffice to expose the crime." *United*

*States v. Kahn*, 415 U.S. 143, 153 n.12 (1974). As the Second Circuit has observed, although "it would be in some sense more efficient to wiretap whenever a telephone was used to facilitate the commission of a crime," the necessity requirement "reflects a congressional judgment that the cost of such efficiency in terms of privacy interests is too high." *Lilla*, 699 F.2d at 105 n.7. Thus, Title III "evince[s] the clear intent to make doubly sure that the statutory authority be used with restraint." *United States v. Giordano*, 416 U.S. 505, 515 (1974). *See, e.g.*, *Dalia v. United States*, 441 U.S. 238, 250 (1979) ("The plain effect of the detailed restrictions of § 2518 is to guarantee that wiretapping or bugging occurs only when there is a genuine need for it and only to the extent that it is needed."); *Concepcion*, 579 F.3d at 220 ("A wiretap is not a device to be turned to as an initial matter, but only where the circumstances demonstrate that it is necessary.").

For instance, in *United States v. Lilla*, the Second Circuit held that a wiretap order violated Title III where the supporting affidavit itself proved the success of normal investigative procedures. *See* 699 F.2d at 105. In *Lilla*, law enforcement listened on an extension as an informant spoke to the defendant about purchasing marijuana and cocaine over the phone. After the telephone call, the informant and an undercover officer met the defendant, who sold them one pound of marijuana and explained that he could sell them cocaine in one or two weeks. *See id.* at 100–01. Despite the success of law enforcement's operation, the government applied for a wiretap on the grounds that the defendant's operation "must involve others," and that no other methods existed to investigate further. *See id.* at 101. The Second Circuit held that Title III does not authorize a wiretap in these circumstances, where "the normal investigative procedures that *were* used were successful." *See id.* 104 (emphasis in original).

Here, as in *Lilla*, the April 7 Affidavit clearly evidenced that Mr. Blazer's cooperation with law enforcement, including his ability to obtain recordings of telephone calls and in-person

conversations with several individuals, had been critical to the Government's investigation. Indeed, the April 7 Affidavit described the content of phone calls, text messages, and in-person meetings – all recorded by Mr. Blazer at law enforcement's direction – that collectively painted a complete picture of the financial arrangement between Mr. Blazer and Mr. Evans. In other words, Mr. Blazer had apparently found a college basketball coach who needed money and was willing, in exchange, to refer basketball players to Mr. Blazer. Any future conduct relating to this offense – introductions to players or their families, for example – would similarly be susceptible to Mr. Blazer's consensual recordings. This is precisely the target offense alleged in the April 7 Wiretap Application.

Notwithstanding the conclusory assertion that the government needed a wiretap, the April 7 Affidavit failed to explain in any meaningful way why "normal investigative procedures" – including the continued use of Mr. Blazer, who was at the government's beck and call, who was taking direction from law enforcement, and who already enjoyed robust contact and communication with Mr. Evans and Mr. Dawkins – were inadequate to investigate the alleged scheme to pay money to Mr. Evans in exchange for referring players. In fact, the only justification provided for the highly intrusive use of a wiretap on Mr. Sood's cell phone was that a wiretap was needed to capture ████████████████████ with Mr. Dawkins. (*See* Ex. 1 at SDNY_00007784 (emphasis added).)

The April 7 Affidavit merely supported that Mr. Evans was accepting payments, and that he had been lured unwittingly into the Government's scheme.[15] In this way, the Government's

---

[15]     The Government had no reason, apart from rank speculation, to believe that Mr. Evans was accepting money from other sources or that Mr. Evans was involved in bribery schemes other than those instigated by Mr. Blazer. Moreover, there has been no suggestion whatsoever that Mr. Evans was engaged in any alleged bribery schemes apart from those that the Government itself concocted and directed Mr. Blazer to execute.

April 7 Affidavit resembled the defective affidavit in *Lilla*, which described a fully successful law enforcement operation but asserted the need for a wiretap on the basis of speculation that the defendant's scheme "must involve others." *See* 699 F.2d at 101. If the necessity requirement of Title III has any force, it must, at a minimum, prevent the government from embarking upon fishing expeditions to identify potential additional crimes. For this reason, the applications for the April 7 Wiretap Order, as well as all subsequent Wiretap Orders, were deficient.[16]

### E. Communications Intercepted Pursuant to Subsequent Wiretap Orders are Derivative Evidence That Must be Suppressed.

When a wiretap order is found to be "insufficient on its face," all intercepted communications and any "evidence derived therefrom" must be suppressed. *See* 18 U.S.C. § 2518(10)(a)(ii); 18 U.S.C. § 2515. Courts have long recognized that Section 2518 of the Wiretap Act codifies the fruits of the poisonous tree doctrine. *Giordano,* 416 U.S. at 532-33, 94 S.Ct. at 1834-35; *United States v. Marion*, 535 F.2d 697, 701 (2d Cir. 1976) (interpreting 18 U.S.C. § 2518(10)(a) to include "the contents or fruits of an intercepted communication."). For this reason, suppression under Section 2518(10)(a) of the Act extends to communications that were "secured under [subsequent] court orders" as long as the applications submitted by the Government for those subsequent orders "detailed at considerable length the contents of conversations intercepted pursuant to the [prior invalid] order." *Giordano*, 416 U.S. 505, 511 n.2, 94 S.Ct. at 1824; *see also id.* at 533 n.19, 1835 (suppressing evidence obtained from subsequent order where Government's application attached "the logs of telephone conversations monitored" under the previous, invalid wiretap order); *see also In re United*

---

[16]     Again, deficiencies in the original April 7 Affidavit taint all subsequent applications, which included a combination of the original facts alleged in the April 7 Affidavit and communications that should never have been intercepted. *See Cirillo*, 499 F.2d at 878 n.3, *supra*.

*States in Order Authorizing the Use of a Pen Register*, 416 F. Supp. 800, 802 n.4 (S.D.N.Y. 1976), *aff'd in relevant part*, *United States v. New York Tel. Co.*, 434 U.S. 159, 166 n. 9, 98 S.Ct. 364, 368 (1977).

The wiretap applications submitted by the Government on May 5, June 19, July 19, August 7, August 22, August 30, and September 20 each "detail[] at considerable length," *see Giordano*, 416 U.S. at 511 n.2, 94 S.Ct. at 1824, the communications intercepted pursuant to the facially insufficient April 7 Wiretap Order.  *See supra* at 4-5 (describing Government's reliance on communications from April 7 Wiretap Order in its subsequent applications).  Each of these wiretap applications were granted.  (Ex. 4 (May 5 Order); Ex. 6  (June 19 Order); Ex. 8 (July 19 Order); Ex. 10 (August 7 Order); Ex. 12 (August 22 Order); Ex. 14 (August 30 Order); Ex. 16 (September 20 Order) (collectively, the "Wiretap Orders")).  Because the subsequent Wiretap Orders were each based on communications intercepted pursuant to the defective April 7 Wiretap Order, the subsequent Wiretap Orders are "tainted by the use of unlawfully intercepted communications" and the communications captured pursuant to those Orders "must be suppressed."[17] *Giordano*, 416 U.S. at 511 n.2, 533, 94 S.Ct. at 1824, 1835 ("communications intercepted under the extension order [of an invalid wiretap] are derivative evidence and must be suppressed").

---

[17]    Even if this Court were to find that these communications are admissible against Mr. Code and Mr. Bland, they are inadmissible in a joint trial with Mr. Evans, Mr. Dawkins, and Mr. Richardson.  *See United States v. Figueroa*, 618 F.2d 934, 940 (2d Cir. 1980) (reversing all three convictions where the Government was "trying to enjoy the benefit of having put [the defendant against whom evidence was inadmissible] on trial with two co-defendants and then offering evidence against him on grounds available, if at all, only to his co-defendants").

**F.     Defendants are Entitled to the Transcripts of the Grand Jury's Proceedings Because the Indictment Against Them may be Based Upon Communications Obtained Pursuant to the April 7 Wiretap Order and the Subsequent Wiretap Orders.**

In *United States v. Tane,* 329 F.2d 848, 854 (2d Cir. 1964), the Second Circuit explained that in instances where an indictment against a defendant is based "almost exclusively" on evidence derived from an   invalid wiretap, dismissal of the indictment is appropriate.  329 F.2d 848, 854 (2d Cir. 1964); *see also United States v. Magaddino*, 496 F.2d 455, 462 (2d Cir. 1974) (indictment dismissed where the Government failed to demonstrate that defendants' indictment rested on evidence beyond that obtained via illegal wiretap).

Defendants have reason to believe that the Grand Jury's decision to indict them was based substantially on communications intercepted pursuant to the April 7 Wiretap Order, the subsequent Wiretap Orders, or evidence derived therefrom.  (*See* Ind. at ¶¶ 26(a), 26(b), 26(c), 31, 32 (describing calls intercepted pursuant to the April 7 Wiretap Order or the subsequent Wiretap Orders)).  However, Defendants cannot assess whether they have a basis for moving to dismiss the Indictment against them unless they are able to review the transcripts of the Grand Jury's proceedings to ascertain whether his indictment was based "almost exclusively" upon these improper communications. *Tane*, 329 F.2d at 853.  Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) permits a court to disclose a grand jury's proceedings at the request of a defendant who has demonstrated "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Because the Indictment against Defendants may have been based "almost exclusively" upon evidence derived from an invalid wiretap, they have demonstrated sufficient cause under Rule 6(e)(3)(E)(ii) to merit disclosure of the transcripts of the Grand Jury's proceedings.

25

**CONCLUSION**

For the foregoing reasons, this Court should (a) suppress all communications intercepted pursuant to the April 7 Wiretap Order, as well as all evidence derived therefrom, including all communications intercepted pursuant to the subsequent Wiretap Orders and all evidence derived therefrom; and (b) authorize the disclosure of the Grand Jury's proceedings to Defendants under Rule 6(e)(3)(E)(ii).[18]

*[SIGNATURE PAGE FOLLOWS]*

---

[18]    Based on the discovery produced by the Government, Defendants have concerns regarding the credibility of FBI Special Agent Jason Wake. To date, Defendants have not unearthed sufficient information which would enable them to make a good faith request for a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978); *see also United States v. Papadakos*, 729 F. App'x 41, 44 (2d Cir. 2018), *cert. denied sub nom. Zografidis v. United States*, No. 17-9408, 2018 WL 3024150 (U.S. Oct. 1, 2018); *United States v. Lambus*, 897 F.3d 368 (2d Cir. 2018). Pursuant to *Franks* and its progeny, Defendants respectfully request leave to ask for a *Franks* hearing if further information comes to light prior to trial.

Dated:  New York, New York
        December 3, 2018

Respectfully submitted,

**NEXSEN PRUET LLC**

By: /s/ Mark. C. Moore
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211
*Attorneys for Defendant Merl Code*

**HANEY LAW GROUP PLLC**

By: /s/ Steven A. Haney
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470
*Attorneys for Defendant Christian Dawkins*

**BARNES AND THORNBURG, LLP**

By: /s/ William R. Martin
William R. Martin
1717 Pennsylvania Ave
Suite 500
Washington, DC 20006
(202) 465-8422
*Attorneys for Defendant Lamont Evans*

**LAW OFFICES OF JEFFREY LICHTMAN**

By: /s/ Jeffrey B. Einhorn
Jeffrey B. Einhorn
Jeffrey Lichtman
11 E. 44th Street, Ste. 501
New York, New York 10017
(212) 581-1001
*Attorneys for Defendant Anthony "Tony" Bland*

**MORDOCK BARBER, LLC**

By: /s/ Craig J. Mordock
Craig J. Mordock
7611 Maple Street, Suite A3
New Orleans, Louisiana 70118
(504) 304-2335
*Attorneys for Defendant Emanuel "Book"
Richardson*