UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

UNITED STATES OF AMERICA                    :

   -v.-                                                    :        S1 17 Cr. 684 (ER)

MERL CODE, and
CHRISTIAN DAWKINS                           :

                Defendants.         :

------------------------------------------------------------------x

## **GOVERNMENT'S OMNIBUS MOTIONS IN LIMINE**

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Robert L. Boone
Noah Solowiejczyk
Eli J. Mark
Assistant United States Attorneys

- Of Counsel -

# Table of Contents

**Preliminary Statement**..................................................................................................... 1

**BACKGROUND** ................................................................................................................ 1

**ARGUMENT** ..................................................................................................................... 4

   **I. THE DEFENDANTS SHOULD BE PRECLUDED FROM RAISING AN
ENTRAPMENT DEFENSE** ............................................................................................ 4

      **A. Applicable Law** ...................................................................................................... 5

      **B. Discussion**.............................................................................................................. 8

         *1. Inducement* .................................................................................................... 8

         *2. Predisposition* ............................................................................................. 12

   **II. IN THE ALTERNATIVE, THE GOVERNMENT SHOULD BE PERMITTED TO
OFFER EVIDENCE OF THE DEFENDANT'S PRIOR CONDCUT IN *UNITED
STATES V. GATTO* AS DIRECT EVIDENCE OF PREDISPOSITION**........................... 14

   **III. THE DEFENDANTS SHOULD BE PRECLUDED FROM OFFERING EVIDENCE
THAT THEY HAD RELATIONSHIPS WITH OTHER COACHES WHO THEY DID
NOT BRIBE**.................................................................................................................. 17

      **A.   Applicable Law** ................................................................................................. 17

         *1. "Good Act" Evidence is Impermissible and Irrelevant* ........................... 17

         *2. Rules 402 and 403: Relevance and Confusion* ........................................ 19

      **B.   Discussion**........................................................................................................ 20

   **IV. THE DEFENSE SHOULD BE PRECLUDED FROM PUTTING THE NCAA AND
THE NCAA'S RULES ON AMATEURISM ON TRIAL** .................................................. 21

   **V. IN THE EVENT THE DEFENDANTS TESTIFY, THE GOVERNMENT MUST BE
PERMITTED TO IMPEACH THEM WITH EVIDENCE OF THEIR PRIOR
CONVICTION IN *UNITED STATES V. GATTO*** ........................................................ 23

   **VI. THE DEFENDANTS SHOULD BE PRECLUDED FROM ARGUING THAT THE
GOVERNMENT OVERREACHED IN UTILIZING CERTAIN LAWFUL
INVESTIGATIVE TOOLS OR FAILURE TO OBTAIN CERTAIN EVIDENCE
PREVENTS THE JURY FROM FINDING GUILT** ........................................................ 25

**CONCLUSION** ................................................................................................................ 26

## Table of Authorities

**Cases**                                                                                              **Page(s)**

*Costantino v. Herzog*, 203 F.3d 164 (2d Cir. 2000) ............................................................... 15

*Tuseo v. Landucci*, 548 F. Supp. 180 (S.D.N.Y. 1982) ..........................................................6-7

*United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008) ........................................................ 6

*United States v. Bala*, 236 F.3d 87 (2d Cir. 2000) .................................................................... 5

*United States v. Boykoff*, 67 F. App'x 15 (2d Cir. 2003) .......................................................... 17

*United States v. Brand*, 467 F.3d 179 (2d Cir. 2006)........................................................5, 8, 11

*United States v. Browne*, 621 F. App'x 44 (2d Cir. 2015) ....................................................... 24

*United States v. Buie*, 407 F.2d 905, 908 (2d Cir. 1969) ........................................................... 6

*United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000) ............................................................ 15

*United States v. Demosthene*, 334 F. Supp. 2d 378 (S.D.N.Y. 2004) .................................. 8, 14

*United States v. Dyman*, 739 F.2d 762 (2d Cir. 1984) ............................................................ 15

*United States v. Epps*, 747 F. App'x 544 (2d Cir. July 31, 2018) ............................................ 13

*United States v. Estrada*, 430 F.3d 606 (2d Cir. 2005) ........................................................... 24

*United States v. Fiumano*, 2016 WL 1629356 (S.D.N.Y. Apr. 25, 2016) ............................... 18

*United States v. Gilmore*, 436 F. Supp. 187 (W.D.N.Y. 1977) ..................................................9

*United States v. Glover*, 153 F.3d 749 (D.C. Cir. 1998) ......................................................... 10

*United States v. Grimm*, 568 F.2d 1136 (5th Cir. 1978) .................................................... 18, 19

*United States v. Hawley*, 554 F.2d 50 (2d Cir. 1977) .............................................................. 23

*United States v. Hurtado*, 47 F.3d 577 (2d Cir. 1995) .......................................................... 7, 13

*United States v. Lizdale*, 38 F. App'x. 657 (2d Cir. 2002) ........................................................ 8

*United States v. Mayo*, 705 F.2d 62 (2d Cir. 1983) .............................................................. 7, 15

*United States v. McKinley*, 70 F.3d 1307 (D.C. Cir. 1995) ..................................................... 10

*United States v. Medical Therapy Sciences, Inc.*, 583 F.2d 36 (2d Cir. 1978) ......................... 23

*United States v. Mendoza-Salgado*, 964 F.2d 993 (10th Cir. 1992) ........................................ 10

*United States v. Mergen*, 2010 WL 395974 (E.D.N.Y. 2010) ............................................. 8, 14

*United States v. Nekritin* 2011 WL 2462744 (E.D.N.Y. June 17, 2011) .................................................. 19

*United States v. Ogle*, 328 F.3d 182 (5th Cir. 2003) ........................................................................ 6

*United States v. Ortiz,* 2002 WL 31427356 (S.D.N.Y. Oct. 20, 2002) ................................. 25

*United States v. Paulino*, 445 F.3d 211 (2d Cir. 2006) ............................................................ 15

*United States v. Payton*, 159 F.3d 49 (2d Cir. 1998) ................................................................. 23

*United States v. Perez,* 2011 WL 1431985 (S.D.N.Y. Apr. 12, 2011) ............................. 18, 19

*United States v. Persico*, 1997 U.S. Dist. LEXIS 23290 (E.D.N.Y. Mar. 13, 1997) .............................. 13

*United States v. Pilarinos*, 864 F.2d 253 (2d Cir. 1988) ......................................... 6, 11, 12

*United States v. Pitre*, 960 F.2d 1112 (2d Cir. 1992) ............................................................. 16

*United States v. Reese*, 933 F. Supp. 2d 579 (S.D.N.Y. 2013) .................................... 14

*United States v. Roldan Zapata*, 916 F.2d 795 (2d Cir. 1990) .......................................... 15, 16

*United States v. Saldarriaga*, 204 F.3d 50 (2d Cir. 2000) (per curiam) ................................ 25

*United States v. Salerno*, 66 F.3d 544 (2d Cir. 1995) ................................................................. 7

*United States v. Salovitz*, 701 F.2d 17 (2d Cir. 1983) .................................................................. 14

*United States v. Sampson,* 2015 WL 2066073 (E.D.N.Y. May 4, 2015) .................................. 24

*United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990) ...................................................... 18, 19, 20

*United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990) ............................................................ 19

*United States v. Silvestri*, 719 F.2d 577 (2d Cir. 1983) ......................................................... 11

*United States v. Singh*, 54 F.3d 1182 (4th Cir. 1995) ................................................................ 10

*United States v. Siraj*, 468 F. Supp. 2d 408 (E.D.N.Y. 2007) ..................................................... 9

*United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997) ............................................................ 22

*United States v. Toney*, 615 F.2d 277 (5th Cir. 1980)............................................................. 23

*United States v. Vargas*, 702 F. Supp. 70 (S.D.N.Y. 1988) ................................................. 17

*United States v. Walker*, 191 F.3d 326 (2d Cir. 1999) ..................................................... 18, 19

*United States v. Williams*, 23 F.3d 629 (2d Cir. 1994) ............................................................. 5

*United States v. Williams*, 205 F.3d 23 (2d Cir. 1994) .......................................... 15, 16, 18

*United States v. Young*, 78 F.3d 758 (1st Cir. 1996) ................................................................ 10

**Statutes**

Fed. R. Evid. 402 ................................................................................................................ 19

Fed. R. Evid. 403 ................................................................................................................ 20

Fed. R. Evid. 404 ................................................................................................................ 15

Fed. R. Evid. 608 ................................................................................................................ 24

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motions *in limine* seeking rulings:

(1) precluding either defendant from advancing a defense of entrapment or arguing that he was entrapped into bribing men's college basketball coaches;

(2) precluding the defendants from adducing evidence that they did not bribe uncharged men's college basketball coaches;

(3) precluding the defendants from adducing evidence and arguing the merits of the NCAA's amateurism rules and/or the pervasiveness of rule-breaking in college basketball;

(4) permitting the Government to admit evidence of the defendants' prior convictions in *United States v. Gatto*, 17 Cr. 686 (LAK) in the event either of the defendants testifies;

(5) precluding the defense from arguing that the Government overreached in utilizing undercover law enforcement officers and wiretaps in investigating the defendants, and/or the failure to obtain evidence from these investigative tools prevents the jury from finding guilt.[1]

## BACKGROUND

As the Court is aware, defendants Christian Dawkins and Merl Code are charged in a multi-count indictment (the "Indictment") with bribing men's college basketball coaches with the expectation that in return the coaches would use their influence to steer college players under their control to sign contracts with Dawkins, Code and other bribe payers upon entering the

---

[1] What follows is based on the Government's efforts to identify some potential issues that might be presented by the defense's evidence and arguments at trial. The Government respectfully requests the opportunity to make further motions *in limine* as the defense clarifies its theory of the defense and evidence it will seek to admit at trial.

National Basketball Association (the "NBA").  The Indictment was the result of a long-term investigation conducted by the United States Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation (the "FBI"), and involved, as detailed in the Indictment, a cooperating witness ("CW-1") and two undercover FBI agents ("UC-1" and "UC-2").  At all relevant times, Dawkins was involved in recruiting athletes as business clients, first for Sports Management Company-1 ("SMC-1"), and then, beginning in at least May 2017, for the benefit of his own sports management business (referred to as Dawkins's Company), which Dawkins co-founded with a corrupt financial advisor, Munish Sood, among others.  Dawkins's Company worked to attract clients, by among other things, paying bribes to coaches at NCAA Division I universities so that they would steer student-athletes under their influence to retain Dawkins's Company's services.  Beginning in at least June 2017, Code, an Adidas consultant, began working directly with Dawkins and Dawkins's Company, whereby Code received thousands of dollars of payments per month from Dawkins and Dawkins's Company, in part, in exchange for his assistance leveraging his relationship with college basketball coaches, who were receiving bribes to steer student-athletes to retain Dawkins's Company's services.  The coaches the defendants bribed included, among others Lamont Evans, who was a coach at the University of South Carolina and later Oklahoma State University; Emanuel Richardson, a/k/a "Book," who was a coach at the University of Arizona, and Anthony Bland, a/k/a "Tony," who was a coach at the University of Southern California.

The Indictment provides extensive detail about the bribery scheme, including extensive allegations regarding certain specific corrupt payments to coaches who received bribes in return for a promise to deliver players to the bribe payers, including Dawkins, assisted by Code, for whom securing a future NBA player as a client could prove extremely profitable.  The bribe

payments detailed in the Indictment began in at least mid to late 2015, according to evidence the Government will present at trial.  In particular, in a March 2016 recorded meeting from the date Dawkins first introduced CW-1 to Evans, Dawkins informed CW-1 that he had already been making bribe payments to Evans, who was then coaching at the University of South Carolina, so that Evans would exert his influence over certain student-athletes he coached in order for them to retain the services of those paying bribes.  Subsequently, Dawkins asked CW-1 for assistance in continuing to make bribe payments to Evans, and so from in or about April 2016 to in or about July 2017, as facilitated by Dawkins, CW-1 and Sood paid bribes to Evans for his influence.  As a result of the bribe payments, in or around February 2017, Evans arranged a meeting between a student-athlete and CW-1, and pressured the student-athlete to use CW-1's services, while failing to disclose that he had received bribes in exchange for directing the athlete to retain CW-1.

Dawkins also facilitated the payment of later bribe payments to other coaches on behalf of CW-1, UC-1 and UC-2, who were posing as CW-1's financial backers.  These bribe payments included at least $20,000 in bribes to Richardson, another college basketball coach, which were paid in June and July 2017.  As a result of these bribe payments, Richardson arranged a meeting between Dawkins, Sood, and UC-2 with the relative of a student-athlete in order to steer the student-athlete to retain Dawkins's and Sood's services.

The Indictment details that on or about June 2017, Dawkins introduced Code to Sood, CW-1, UC-1, and UC-2, in order to discuss potential business opportunities, including Code's assistance in identifying corrupt college basketball coaches, to whom they would bribe.  During subsequent phone calls, Dawkins and Code discussed coaches that Code could facilitate introductions with for the purpose of bribing in order for them to steer student-athletes to retain Dawkins's Company's services.  In July 2017, Dawkins and Code arranged meetings with

numerous basketball coaches, some of whom – including Bland and at least two other coaches – Dawkins and UC-1 paid bribes to in order to ensure that student-athletes at their schools retained Dawkins's Company's services once the athletes became professionals.  Subsequently, in August 2017, Bland introduced Dawkins and Sood to a family member of a student-athlete, and an associate of another athlete, in order to steer the student-athletes to retain Dawkins's and Sood's services.  Similarly, bribed coaches identified student-athletes that would be "lay-ups" for Dawkins to retain as clients because of the coaches' influence.

As further alleged in the Indictment, these payments were in direct violation of the coaches' obligations to their employers, including their obligations to comply with NCAA rules.  In particular, those rules – and the coaches' employment contracts mandating compliance with those rules – expressly precluded coaches from facilitating contact between student-athletes and agents or financial advisors and from receiving compensation directly or indirectly from outside sources with respect to any actions involving student-athletes.  As a result, the defendants' bribery scheme violated not just the NCAA rules, but also the coaches' duties to their employers.

## ARGUMENT

### I.  THE DEFENDANTS SHOULD BE PRECLUDED FROM RAISING AN ENTRAPMENT DEFENSE.

In pre-trial correspondence, defense counsel for both defendants have suggested that they intend to present an entrapment defense.  Further, they have indicated that they intend to call as witnesses several FBI agents (specifically, UC-1, UC-2 and an FBI case agent) whom they intend to question "about the entrapment of Defendants Code and Dawkins in a scheme to bribe college coaches," and their purported "personal conduct in attempting to cajole, coax and coerce the Defendants to participate in the alleged bribery of college coaches."

4

The Court should preclude a defense of entrapment because, as detailed below, there will be factual basis to support an entrapment instruction at trial.  At bare minimum, the Court should preclude the defendants from referring to an entrapment defense – in substance or otherwise – during their opening arguments or through questioning of witnesses until a factual predicate to support such a defense theory has been established.  Nor should defense counsel be permitted to argue that the reason the defendants took the actions they did was because they were "cajole[d], coax[ed] and coerce[d]" to bribe coaches by the acts of government agents.  Such arguments are irrelevant and misleading as a matter of law, for the reasons described below.

### A. Applicable Law

Entrapment is an affirmative defense which must be proved by a preponderance of the evidence.  *United States v. Williams*, 23 F.3d 629, 635  (2d Cir. 1994).  The entrapment defense has two elements: "(1) government inducement of the crime, and (2) lack of predisposition on the defendant's part."  *United States v. Bala*, 236 F.3d 87, 94 (2d Cir. 2000).  A defendant arguing entrapment bears the burden of producing "credible evidence of government inducement."  *Id.*; *see also Williams*, 23 F.3d at  635 ("[e]ntrapment . . . requires a defendant to prove by a preponderance of the evidence the government's inducement to commit the crime").  Inducement includes "soliciting, proposing, initiating, broaching or suggesting the commission of the offense charged," or, to put it another way, "a defendant must establish that [it was] the prosecution [that] set the accused in motion."  *United States v. Brand*, 467 F.3d 179, 190 (2d Cir. 2006) (internal quotation marks omitted; alterations in original).  The burden of showing inducement "should not be treated as a hollow requirement," and the defendant must do more than "simply point to the [G]overnment's use of an undercover agent" or informant.  *Id.*   The mere fact that the Government provided the opportunity to engage in a crime does not mean

there was inducement; to be entitled to a jury instruction on entrapment, the defendant must "present not just a smattering or a scintilla of evidence of government inducement, but substantial evidence that it was the Government that was responsible for the formation of" the defendant's criminal intent.  *United States v. Ogle*, 328 F.3d 182, 187 (5th Cir. 2003).

Moreover, "inducement must be direct" and must be specific to each defendant seeking to assert the affirmative defense.  *United States v. Al-Moayad*, 545 F.3d 139, 158 (2d Cir. 2008). Where, by contrast, the alleged inducement is made only to "defendant A . . . and defendant A takes it upon himself to induce" or otherwise recruit "defendant B to participate in the crime, then *there can be no entrapment with respect to defendant B*."  *Id.* (emphasis added, internal quotations omitted).  Indeed, while the Second Circuit has recognized a limited "derivative entrapment defense" for those circumstances where the defendant seeking to assert the defense was not directly induced by a government agent – but was instead induced by a "middleman" – a defendant seeking to assert such a derivative defense must show that the "middleman" became, in effect, a "government agent[ ]" inducing the defendant at the Government's behest.  *United States v. Pilarinos*, 864 F.2d 253, 256 (2d Cir. 1988); *see also United States v. Buie*, 407 F.2d 905, 908 (2d Cir. 1969) (derivative entrapment defense available "where government agents act through private citizens").

By contrast, if the evidence establishes only that the alleged inducement by Government agents was directed at a middleman and "the middleman, responding to the pressure upon him, takes it upon himself to induce another person to participate in the crime . . . the latter person is not entitled to a derivative entrapment charge."  *Pilarinos*, 864 F.2d at 256; *see also United States v. Silvestri*, 719 F.2d 577, 579 (2d Cir. 1983) (no derivative entrapment defense where recruitment of defendant by co-defendant was "unbeknownst to" the Government); *Tuseo v.*

6

*Landucci*, 548 F. Supp. 180, 182 (S.D.N.Y. 1982) ("[T]here is no constitutional requirement that an entrapment defense be allowed where some third party, other than a law enforcement officer, plays a role in bringing about the commission of a crime.").

With respect to the second prong of the standard, and even if a defendant can meet his burden of showing inducement to commit the offense the defendant is still guilty if the Government establishes beyond a reasonable doubt "predisposition on the defendant's part." A defendant is predisposed to commit a crime if he is "ready and willing without persuasion to commit the crime charged and awaiting any propitious opportunity." *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir. 1995) (citations omitted). Predisposition may be shown by evidence of: "'(1) an existing course of criminal conduct similar to the crime for which [the defendant] is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement.'" *Id.* (quoting *United States v. Valencia*, 645 F.2d 1158, 1167 (2d Cir. 1980)).

Where the Government's evidence of predisposition is uncontroverted, the defendant is precluded from offering an entrapment defense. *See United States v. Hurtado*, 47 F.3d 577, 585 (2d Cir. 1995) ("If the government . . . presents uncontradicted proof of predisposition, the entrapment defense is precluded as a matter of law."); *United States v. Mayo*, 705 F.2d 62, 70 (2d Cir. 1983) ("[T]he entrapment defense will not go to the jury in the face of substantial evidence of propensity unless the defendant produces some evidence to contradict directly the prosecution's showing.").

In circumstances where the defendant cannot establish a factual predicate for an entrapment defense, courts routinely prevent a defendant from making arguments to the jury

7

suggesting an unsupported defense theory, because it would only serve to invite juror confusion or nullification. *See, e.g., United States v. Lizdale*, 38 F. App'x. 657, 660 (2d Cir. 2002) (affirming district court's ruling prohibiting defendant to present evidence of duress that where it was not supported by legally sufficient evidence); *United States v. Reese*, 933 F. Supp. 2d 579, 584 (S.D.N.Y. 2013) (ruling, in advance of trial, that defendant could not advance certain arguments clearly "aimed at jury nullification"); *United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) (A defendant "may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case."); *United States v. Mergen*, 2010 WL 395974, at *7 (E.D.N.Y. 2010) (where defendant's theory is "legally insufficient" court can properly "preclude Defendant from presenting the defense to the jury").[2]

**B. Discussion**

Here, there is no basis for either defendant to assert an entrapment defense at trial because (1) neither defendant can meet his burden of establishing inducement, and (2) even if they could, the overwhelming and undisputed evidence of predisposition would foreclose such a defense.

*1. Inducement*

As an initial matter, with respect to defendant Dawkins, he cannot meet his burden to show inducement, because he will be completely unable to show that the Government "set the accused in motion." *Brand*, 467 F.3d at 190. To the contrary, as alleged in the Indictment, and as will be supported by recorded meetings offered at trial, the evidence will show that defendant

---

[2] Moreover, when the Government argues that an affirmative defense is legally insufficient, it is appropriate for the Court to require the defense to present evidence at a pretrial evidentiary hearing or otherwise outside of the presence of the jury that supports the defense as a matter of law. *See, e.g., Lizdale*, 38 F. App'x at 660; *Mergen*, 2010 WL 395974 at *7.

Dawkins had started bribing at least one men's basketball coach, Lamont Evans at the University of South Carolina, well before he first interacted with any government agents.  Indeed, in a March 2016 recorded conversation with CW-1, after Dawkins initially recruited CW-1 to start making payments to Evans, Dawkins informed CW-1 that he had previously been making payments to Evans.

Moreover, and of some relevance with respect to defendant Code as detailed further below, the evidence will further show that it was defendant Dawkins – and not a Government agent – who brought Code into the coach bribery conspiracy.  Further, the Government expects its evidence will show not simply that Dawkins had been engaged in coach bribery before interacting with a Government agent, but that Dawkins designed the scheme on his own, expressing repeatedly in recordings that will be offered at trial not simply his prior experience paying bribes to Evans but his own views regarding the value to him and his co-conspirators of bribing assistant coaches.  These facts are fatal to any finding of inducement with respect to Dawkins.  *See, e.g. United States* v. *Siraj*, 468 F. Supp. 2d 408, 414 (E.D.N.Y. 2007) ("The first element of the entrapment defense, namely, inducement, requires a defendant to show that it was the government, not he, that originated 'the criminal design.'") (quoting *Brand*, 467 F.3d at 189).

The mere fact that Government agents supplied some of the money used by Dawkins and his co-conspirators to bribe coaches is not sufficient to meet the defendant's burden of establishing inducement.  *See, e.g.*, *United States* v. *Siraj*, 468 F. Supp. 2d 408, 415 (E.D.N.Y. 2007) ("That government agents merely afford opportunities or facilities for the commission of the offense does not constitute entrapment; entrapment occurs only when the criminal conduct was the product of the creative activity of law enforcement officials.") (citing *Sherman* v. *United States*, 356 U.S. 369, 372 (1958)); *United States* v. *Gilmore*, 436 F. Supp. 187, 191 (W.D.N.Y.

1977) ("Certainly if Government agents merely afford opportunities or facilities for the commission of offenses, that does not constitute inducement or persuasion.").

Nor is it material that Government agents at times encouraged Dawkins to make bribe payments to additional coaches. *United States* v. *McKinley*, 70 F.3d 1307, 1310 (D.C. Cir. 1995) ("Although repeated solicitations by the Government, coupled with persuasive overtures or evidence of the defendant's reluctance, may in some cases warrant an entrapment instruction, appellant has not demonstrated that [the Government agent] made overtures involving threat or reward prior to the day of the drug transaction, when appellant himself initiated the issue of assisting the officer in purchasing drugs.  Moreover, there is no indication that appellant at any time indicated reluctance to facilitate the drug transaction, which suggests that he was disposed to aid and abet the crime, rather than being induced to do so by [the Government agent's] solicitations."); *United States* v. *Glover*, 153 F.3d 749, 755 (D.C. Cir. 1998) (holding minimal evidence of reluctance and no evidence of "'persuasive overtures' that go beyond those ordinarily present in a drug transaction" to be insufficient to merit an entrapment instruction); *United States* v. *Young*, 78 F.3d 758, 761 (1st Cir. 1996) (finding no inducement where there was no evidence of "coercion, intimidation or any promise of benefits other than the opportunity to commit the crime"); *United States* v. *Singh*, 54 F.3d 1182, 1189 (4th Cir. 1995) (finding no inducement where former patient, acting as a government agent, convinced physician to write her prescription for pharmaceuticals, forming the factual basis of his conviction for distributing controlled substances outside the scope of his medical practice for other-than-legitimate medical purposes, and for falsifying prescription information); *United States* v. *Mendoza-Salgado*, 964 F.2d 993, 1004 (10th Cir. 1992) (finding no inducement and rejecting defendant's self-portrayal as "gullible alcoholic," finding dispositive that the record indicated that "the government

10

informer did no more than advertise [an Agent's] interest in purchasing cocaine" and setting up the controlled buy).

Moreover, with respect to defendant Code, any argument for "inducement" would be even more infirm because the Government did nothing at all to initiate his involvement in the crime.  To the contrary, there does not appear to be any dispute that Dawkins – not a Government agent – brought Code into the charged criminal conduct.  Indeed, the Government expects its trial evidence will establish that it had not heard of, let alone planned to target, Code prior to his identification by Dawkins, who invited Code to participate in meetings with Sood, CW-1, and UC-1, and identified Code as someone who had an extensive network of connections in basketball that they could leverage.  There is thus no factual basis for Code to suggest that the Government "set [him] in motion," *Brand*, 467 F.3d at 190.

Thus, Code could at most seek to assert a "derivative entrapment" claim, and the burden would be on him to establish that Dawkins effectively became a "government agent," inducing him to join the conspiracy at the Government's behest.  *Pilarinos*, 864 F.2d at 256.  There is simply no evidence to support such a finding.

In particular, there is no evidence to support a finding that it was the Government – rather than Dawkins – who identified Code and induced his participation in the charged crimes.  There is certainly no evidence that the Government directed Dawkins to recruit Code or even had any knowledge of his recruitment.  *Cf. Silvestri*, 719 F.2d at 579 (no derivative entrapment defense where recruitment of defendant by co-defendant was "unbeknownst to" the Government).  Nor is there any evidence, as noted above, the Government took any affirmative action to set Code "in motion."  *Brand*, 467 F.3d at 190.  Because Code was "induced," if at all, only by a

"middleman" who "t[ook] it upon himself to induce another person to participate in the crime"

Code is "not entitled to a derivative entrapment charge." *Pilarinos*, 864 F.2d at 256.

In sum, neither defendant can meet his burden with respect to inducement, itself fatal to any effort to advance an entrapment defense at trial.

### 2. Predisposition

Moreover, even if the defendants could somehow establish inducement on these facts, the Government's evidence of predisposition is overwhelming. The evidence as to predisposition would include, among other things, numerous recordings made during the course of the investigation in which the defendants discuss their experience making payments, in violation of NCAA rules, to bribe coaches and student-athletes.[3] *See Salerno*, 66 F.3d at 547 (predisposition may be established through evidence of "an existing course of criminal conduct," and an "already formed design . . . to commit the crime").

In particular, as described above, defendant Dawkins repeatedly discusses his prior experience making bribe payments to Lamont Evans, and the value of bribing assistant Division I men's basketball coaches. Defendants Dawkins and Code also propose various independently formed designs on how to carry out the charged crimes, including for example telling coaches that they can help financially as needed with recruitment of high school players to attend their universities rather than paying coaches at regular intervals directly. In addition, it was Dawkins and Code that identified specific coaches that the group should work with – coaches who were

---

[3] As discussed further below, should the Court be inclined to permit the defendants to raise an entrapment defense, the Government will seek to offer their prior convictions in *United States v. Gatto*, 17 Cr. 686 (LAK), among other things, as evidence of predisposition. This conviction, as the Court is aware, involved the defendants efforts to bribe the family of a high school student-athlete in order to attend the University of Louisville, which related to the defendants involvement in making a bribe payment to a University of Louisville coach, and occurred during the same general time period as many of the bribes at issue in this case.

subsequently bribed.  And perhaps, most important of all, in addition to these discussions about their historical experience and/or their design to carry out the crime, the defendants make clear that they want to continue to engage in this bribery scheme in the future, and that defendant Code wants to be compensated for his participation.  For example, in August 2017, defendant Dawkins tells UC-2 how he has already made payments to various men's basketball coaches and that he wants to make payments to additional coaches as well; and defendant Code discusses with Dawkins how he wants his contributions to the scheme to be appropriately valued.  These conversations make clear, thus, the existing, continuous and ongoing nature of the defendant's criminal conduct.

As such, even if the defendants could establish inducement (which they cannot), there would be sufficient evidence of predisposition to permit the Court to preclude an entrapment defense as a matter of law.  *See, e.g.*, *United States* v. *Hurtado*, 47 F.3d at 585 ("[T]here was ample proof that [defendant] had been involved in drug dealing prior to any involvement with a government agent or informant.  [Defendant] offered no evidence to rebut this showing of predisposition.  Accordingly, the district court did not err in declining to instruct the jury on entrapment."); *United States* v. *Persico*, 1997 U.S. Dist. LEXIS 23290 (E.D.N.Y. Mar. 13, 1997) (precluding entrapment defense in light of "the overwhelming proof of [the defendant's] criminal predisposition.")

Indeed, permitting the defendants to present an entrapment defense to the jury, on these facts, would serve no purpose but to invite juror confusion or nullification.  The Court should thus preclude the defendants from advancing an entrapment defense at trial.  *See United States v. Epps*, 747 F. App'x 544, 549 (2d Cir. July 31, 2018) ("Moreover, Epps has not demonstrated that the district court's decision to preclude mention of the theory in the defense's opening statement

amounted to an abuse of discretion. (quoting *United States v. Salovitz*, 701 F.2d 17, 21 (2d Cir. 1983) ("We believe that an opening statement by the defendant is not [a constitutionally] guaranteed right, and that the making and timing of opening statements can be left constitutionally to the informed discretion of the trial judge."))); *see also Reese*, 933 F. Supp. 2d at 584 (ruling, in advance of trial, that defendant could not advance certain arguments clearly "aimed at jury nullification"); *Demosthene*, 334 F. Supp. 2d at 380 (A defendant "may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case."); *Mergen*, 2010 WL 395974, at *7 (where defendant's theory is "legally insufficient" court can properly "preclude Defendant from presenting the defense to the jury"). The Court should therefore preclude an entrapment defense at trial.  At a bare minimum, the Court should certainly preclude the defendants from raising an entrapment defense in any way, shape, or form in their opening statements and prior to making, outside of the presence of the jury, a detailed factual showing sufficient to satisfy the Court that the defendants will have a basis for seeking an entrapment instruction at the close of evidence

## II.  IN THE ALTERNATIVE, THE GOVERNMENT SHOULD BE PERMITTED TO OFFER EVIDENCE OF THE DEFENDANT'S PRIOR CONDCUT IN *UNITED STATES V. GATTO* AS DIRECT EVIDENCE OF PREDISPOSITION.

Alternatively, should the Court be inclined to permit the defendants to advance an entrapment defense at trial – which the Court should not for all of the reasons stated above – the Government will seek to offer evidence of their prior conduct in *Gatto* as direct evidence of predisposition.[4]

---

[4] Regardless of whether the defendants plan to raise an entrapment defense, the Government has informed the defense that they plan to introduce evidence of the defendants' underlying involvement in paying the families and handlers of student-athletes, which is substantive evidence of the conspiracy.

In *United States v. Gatto*, Dawkins and Code were convicted of wire fraud conspiracy and the substantive offense of wire fraud in connection with their participation in a scheme to funnel $100,000 from Adidas to the family member of a high school student-athlete so that that student-athlete would commit to attend the University of Louisville, which is sponsored by Adidas, and then ultimately sign lucrative contracts with Code and Dawkins upon turning professional.

While the admissibility of uncharged or "other acts" evidence is generally governed by Fed. R. Evid. 404(b), evidence of uncharged acts is admissible – without regard to Rule 404(b) – when it constitutes intrinsic or direct proof of the charged crimes.  *See, e.g.*, *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000).  In particular, where a defendant asserts an entrapment defense at trial – and thus where the Government carries the burden of establishing predisposition – the Government is generally permitted to offer prior, relevant convictions to establish "a course of criminal conduct suggesting predisposition.  *See, e.g.*, *United States v. Mayo*, 705 F.2d 62, 69 (2d Cir. 1983) (in firearms case, defendant's prior firearms-related conviction along with prior possession of a firearm "make out a course of conduct suggesting predisposition"); *see also United States* v. *Dyman*, 739 F.2d 762, 770 (2d Cir. 1984) (in bank robbery case, evidence of prior burglary convictions admissible to rebut entrapment defense).

And while any other act evidence is subject to the balancing test set forth in Rule 403, the Second Circuit has long made clear that "other act" evidence that is neither "more sensational" nor "more disturbing" than the charged crimes will not be deemed unfairly prejudicial.  *United States v. Roldan Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *United States v. Williams*, 205 F.3d 23, 3334 (2d Cir. 2000); *see also United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006); *cf. Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) (Because virtually all evidence is

prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair.").

Here, each of the prior convictions in *Gatto* bears directly on the issue of predisposition to commit the charged crimes. With respect to both defendants, in *Gatto*, the defendants were involved in a fraud offense that involved bribing a student-athlete's family to ensure that the student-athlete attended a particular university, and defendant Dawkins had been involved in obtaining bribe payments for that student-athlete to play for an Adidas Grassroots basketball team as early as 2015. Although the bribee was different (the father of a student-athlete as opposed to a coach of student-athlete), the conduct is substantially similar to the charged crime in this case. Both courses of conduct involve paying those with influence over the student-athlete to steer the student-athlete to make a particular decision. In *Gatto*, the payments to the family member were made so that the family member would steer the student-athlete to attend a specific university, and so the student-athlete would ultimately sign with Dawkins and Code. Here, the bribe payments are made to coaches because of their influence over their players so that the coaches will, in exchange, steer the student-athletes to sign with Dawkins and Code. The defendants' prior acts of fraud would thus be strong evidence of predisposition to commit the charged crimes should the Government be forced to meet a burden in that respect at trial.

Nor is any of this evidence subject to exclusion under 403, as it cannot be said to be more serious or sensational than the charged crimes. *See United States* v. *Williams*, 205 F.3d 23, 34 (2d Cir. 2000); *United States* v. *Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (admitting evidence of prior narcotics transactions in narcotics case where other acts evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged") (internal quotation marks omitted) (quoting *United States* v. *Roldan-Zapata*, 916 F.2d at 804));

*see also United States* v. *Vargas*, 702 F. Supp. 70, 72-73 (S.D.N.Y. 1988) (A "[d]efendant must show some undue prejudice, apart from the prejudice implicit in Rule 404(b) evidence").

Accordingly, should the defendants be permitted to raise an entrapment defense, the Government should be allowed to offer the prior convictions in *Gatto* as direct evidence of propensity.

## III.  THE DEFENDANTS SHOULD BE PRECLUDED FROM OFFERING EVIDENCE THAT THEY HAD RELATIONSHIPS WITH OTHER COACHES WHO THEY DID NOT BRIBE.

Defendant Dawkins has indicated that he has subpoenaed two current men's basketball head coaches to testify, and both defendants have indicated they plan to play calls with these coaches in their case-in-chief.  Defendant Dawkins has proffered that he intends to call both coaches to testify about how much influence, as a head coach, they have over their student-athletes and how Dawkins did not bribe them.  To the extent that the defendants, as Dawkins's counsel suggested, seeks to introduce evidence that they dealt with men's basketball coaches who they did not bribe, such evidence would constitute impermissible "good acts" evidence and should be precluded.  Moreover, even were there a marginal non-propensity purpose for such evidence, the absence of criminal conduct in relationships with coaches that are not part of the Government's case-in-chief is irrelevant and inadmissible under Rules 402 and 403.

### A.  Applicable Law

#### 1.  *"Good Act" Evidence is Impermissible and Irrelevant*

The Second Circuit has held that evidence that a defendant engaged in legal, honest business conduct is irrelevant to the question of whether the defendant engaged in charged offenses involving bribery or fraud. *See, e.g., United States v. Boykoff*, 67 F. App'x 15, 20-21 (2d Cir. 2003) (summary order) ("[E]vidence of noncriminal conduct to negate the inference of

criminal conduct is generally irrelevant." (quoting *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978))); *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (affirming the district court's refusal to allow defendant accused of preparing false asylum applications to admit evidence of truthful applications he had allegedly submitted, because whether the defendant "had prepared other, non-fraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent"); *see also United States v. Perez*, No. 09 Cr. 1153, No. 49, 2011 WL 1431985, at \*1 (S.D.N.Y. Apr. 12, 2011) (refusing to allow defendant accused of preparing false immigration applications to introduce evidence that she had accurately advised certain clients about their eligibility for immigration benefits, or that she had prepared certain truthful and accurate applications, and citing *United States v. Walker*, 191 F.3d at 336); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (surveillance tapes in which no incriminating statements were made are not discoverable because "[a] defendant may not seek to establish his innocence through proof of the absence of criminal acts on specific occasions").

Indeed, this principle, sometimes described as the inadmissibility of evidence of "every bank a defendant didn't rob," is "rather elementary." *United States v. Fiumano*, No. 14 Cr. 518 (JFK), 2016 WL 1629356, at \*7 (S.D.N.Y. Apr. 25, 2016) (reserving decision on the Government's motion but noting that "[a] defendant charged with robbing a bank in Manhattan on April 22 cannot offer as evidence to disprove the charged crime that he did not rob the bank's branches in Brooklyn or the Bronx on April 22 or that he did not rob the Manhattan branch on April 20, 21, 23, and 24, because this evidence is irrelevant to the charge that he robbed the Manhattan bank on April 22") (citing *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (affirming a district court's decision to preclude as irrelevant past trips to Jamaica where the defendant, charged with importing cocaine, did not engage in drug activity and holding that "[a]

defendant may not seek to establish his innocence ... through proof of the absence of criminal acts on specific occasions"); *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) ("Whether [the defendant] had prepared other, nonfraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent.").

### 2. *Rules 402 and 403: Relevance and Confusion*

"Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Accordingly, irrelevant "good act" evidence should be precluded. Because "[e]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant," *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978), the Court should exclude any evidence relating to purportedly "innocent" uncharged transactions. *See United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (describing evidence that the defendant had prepared legitimate asylum applications as "simply irrelevant" to whether the defendant had committed the charged crime of preparing false applications); *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990) (holding that taped evidence purporting to show defendants' innocuous conduct were irrelevant and inadmissible because "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." (quoting *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990)).

Following these principles, courts within the Second Circuit have routinely excluded defense efforts to offer evidence of uncharged innocuous conduct. *See Perez*, 2011 WL 1431985, at *1 (excluding as irrelevant evidence that the defendant acted legitimately when preparing asylum applications in uncharged incidents); *United States v. Nekritin*, No. 10 Cr. 491, 2011 WL 2462744, at *5 (E.D.N.Y. June 17, 2011) (excluding as irrelevant evidence that defendant

legitimately billed for some Medicare and Medicaid covered procedures in uncharged instances where defendant were charged in a broad health care fraud conspiracy).

Finally, even if evidence of purportedly innocuous conduct of the defendant or his agent is admissible for a relevant purpose other than to prove defendant propensity, it is inadmissible if its value "is substantially outweighed by," among other things, "confusion of the issues, or misleading the jury . . . [and the] waste of time." Fed. R. Evid. 403.

### B.  Discussion

Although the Government has minimal insight into the defendants' theories of defense and proffered evidence, the Government is aware that defense counsel has subpoenaed two men's head basketball coaches, and defense counsel has represented that he intends to elicit from them the fact that the defendants did *not* bribe them.  The defendants have represented that they similarly seek to offer wiretapped phone calls with both coaches to demonstrate the defendants had relationships with these coaches but, again, never bribed them.  Such evidence of potentially non-criminal dealings with other coaches is wholly irrelevant to any issue in dispute at trial, and should be precluded.  In particular, the fact that defendants Dawkins and Code had non-criminal conversations with coaches – conversations and coaches who are not a part of the charged conspiracy – is not relevant to the allegations that they had other, criminal conversations, and is therefore inadmissible. *See, e.g., United States v. Scarpa*, 897 F.2d at 70 (holding that taped proof that defendants had regular meetings during which they did not discuss criminal activity would be inadmissible).  Further, even if there is marginal relevance of such evidence, despite these coaches not having been alleged to have participated in the charged bribery scheme, the evidence would needlessly complicate and lengthen the trial, since it would introduce non-germane issues that the Government would need to rebut.

20

## IV.  THE DEFENSE SHOULD BE PRECLUDED FROM PUTTING THE NCAA AND THE NCAA'S RULES ON AMATEURISM ON TRIAL.

To the extent the defense seeks to put the NCAA and the NCAA's rules on amateurism, the defense should be precluded from making such arguments, implicitly or explicitly, and from admitting evidence of the same.  In the *Gatto* trial before Judge Kaplan, although the parties originally agreed at the outset that the wisdom and fairness of the NCAA amateurism rules were not at issue in the case, both through argument and otherwise, the defense routinely attempted to put the NCAA and the NCAA's rules on amateurism on trial in an apparent improper attempt to appeal for jury nullification. *See, e.g., United States v. Gatto*, 17 Cr. 686 (LAK) (Dkt. 279 at 5-8) (granting in part the government's motion to exclude testimony of the defendant's expert witness, and summarizing inappropriate jury arguments and questioning).  In *Gatto*, the defendants attempted to make arguments about the unfairness of rules that precluded college athletes from being paid; they sought to offer evidence that the schools profited off of these young athletes; that the players did not have a lot of money; that coaches were paid large salaries; and they sought to offer evidence that the rule breaking by other individuals was common (in what Judge Kaplan routinely referred to as the "everybody's doing it defense," which he held inadmissible).[5]  Judge Kaplan correctly precluded all of these lines of argument and virtually all of this evidence finding it "risked distracting the jury from the issues in this case.  It risked also eliciting the sympathy of the jury for student-athletes who suffered adverse

---

[5] For example, during opening statements, defendant Gatto stated how "[t]he kids on the court [in contrast to the schools], the ones whose blood, sweat and tears is [*sic*] making this game a billion dollar industry, they are not allowed to earn a dime."  (*Id.* at 7-8 (quoting Tr. at 71:15-17).)  And counsel sought to frame the case by stating, "[l]adies and gentlemen, we are here today because the government alleges that Jim Gatto committed two federal crimes when Adidas took a tiny portion of the money that it brought in and shared it with the families of the players on the court" and then related that one such player lived in public housing in North Carolina. (*Id.* (quoting Tr. at 71:24-72:3).)

consequences by reason of the enforcement of NCAA rules.  Most importantly, it suggested to the jury that the 'equitable' result would have been to overlook any deception of the Victim Universities – in other words, to decide the case 'on an improper basis, commonly [and in this case in part] . . . an emotional one.'" (*Id.* at 8.)

The defendants have suggested that they will attempt to elicit similar evidence in this trial, although it would be not at all germane to the charged bribery offenses.  For example, in recent media statements defense counsel has suggested that the Government has engaged in a "selective prosecution," and that at trial they plan to "pull back the curtain" on college basketball, suggesting that they will show how NCAA rule-breaking is routine.  *See* Dan Wetzel, *Judge's light sentencing in first hoops corruption trial sets stage for future fireworks*, Yahoo! Sports (Mar. 5, 2019), available at: https://sports.yahoo.com/judge-hands-out-light-sentences-as-college-hoops-trials-heat-up-013733569.html (quoting defense counsel for Dawkins as stating that he intended to get "[a]s many [college coaches] as I can get in the courtroom" and that he planned to "pull back the curtains [on the sport]." ).  These statements, along with the defense counsel's proffer that they intend to elicit testimony from the subpoenaed coaches about their involvement in NCAA rule-breaking by paying student-athletes suggests that the defense may resort in this trial to arguments that pose a risk of attempting to garner the sympathy of the jury, and, therefore, would be categorically inappropriate. *See United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.").  The defendants are on trial for serious federal crimes, and the defendants should not be able to use this trial as a referendum on the merits of the NCAA's rules or the state of college basketball, in an impermissible effort to garner sympathy with the jury.

**V.  IN THE EVENT THE DEFENDANTS TESTIFY, THE GOVERNMENT MUST BE PERMITTED TO IMPEACH THEM WITH EVIDENCE OF THEIR PRIOR CONVICTION IN *UNITED STATES V. GATTO*.**

In the event that Code and/or Dawkins does in fact testify, the Government must be permitted pursuant to Rule 609(a)(2) to impeach Code and/or Dawkins by admitting evidence of their fraud conviction in the trial of *United States* v. *Gatto*, 17 Cr. 686 (LAK).  Under Rule 609(a)(2), a witness may always be impeached by proof of a prior conviction if the crime involved "dishonesty or false statement."  *See United States* v. *Payton*, 159 F.3d 49, 56-57 (2d Cir. 1998).  In defining that phrase, the Conference Report on the Federal Rules stated:

> the conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness or falsification being on the accused's propensity to testify truthfully.

*United States* v. *Medical Therapy Sciences, Inc.*, 583 F.2d 36, 40 n.3 (2d Cir. 1978 (citation omitted).  The admission of prior felony or misdemeanor convictions involving dishonesty or false statements is not within the discretion of a district court.  *See United States* v. *Hawley*, 554 F.2d 50, 52 (2d Cir. 1977) ("[T]he trial judge must automatically admit evidence of a prior conviction of any crime involving dishonesty or false statement."); *United States* v. *Toney*, 615 F.2d 277, 279 (5th Cir. 1980); *United States* v. *Cabrer*a, 201 F.3d 1243, 1246 n.2 (9th Cir. 2000).  Such convictions are particularly probative of credibility and under Rule 609(a)(2) are always to be admitted.  *Toney*, 615 F.2d at 279-80; *see also Hawley*, 554 F.2d at 52.

In *Gatto*, Code and Dawkins were convicted of "criminal fraud" – specifically, wire fraud for defrauding universities by causing them to issue athletic scholarships under false pretenses.  As such, the Government must be allowed to impeach Code and/or Dawkins, by proof of their prior conviction in *Gatto*. At a minimum, the Government must be permitted to offer the

"essential facts" of Code and/or Dawkins's conviction, including the statutory name of the offense (*i.e.*, conspiracy to wire fraud), the date of conviction, and the sentence imposed. *See United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005).

Furthermore, the Government may properly cross-examine Code and/or Dawkins about their involvement in the *Gatto* scheme under Rule 608.  That Rule provides, in relevant part, that "the court may, on cross-examination, allow" specific instances of a witness's conduct "to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness[] or another witness whose character the witness being cross-examined has testified about." Fed. R. Evid. 608(b)(1)-(2).  Dawkins and Code's participation in the *Gatto* scheme, including, among other things, their efforts to conceal the funneling of illicit payments in the scheme through a bank account Code controlled, is directly relevant to their character for untruthfulness and deception, and thus constitutes quintessential impeachment material.  *See, e.g., United States* v. *Sampson*, No. 13 Cr. 269 (DLI), 2015 WL 2066073, at *13 (E.D.N.Y. May 4, 2015) (permitting cross-examination with respect to certain deceitful acts because the "incidents clearly go to Defendant's character for truthfulness as they all involve incidents where Defendant may have lied or misrepresented facts in order to induce others to act"); *United States* v. *Browne*, 621 F. App'x 44, 47-48 (2d Cir. 2015) (finding the District Court did not abuse its discretion in "permitting cross-examination about [the defendant's] alleged participation in a prior fraudulent real estate transaction" to probe her credibility where the defendant had testified on direct that "she was an unknowing participant in the mortgage fraud scheme at issue in the case").

**VI.  THE DEFENDANTS SHOULD BE PRECLUDED FROM ARGUING THAT THE GOVERNMENT OVERREACHED IN UTILIZING CERTAIN LAWFUL INVESTIGATIVE TOOLS OR FAILURE TO OBTAIN CERTAIN EVIDENCE PREVENTS THE JURY FROM FINDING GUILT.**

Juries are routinely and properly instructed that the Government need not use particular investigative techniques to investigate or prove its cases. *See, e.g., Brand*, 467 F.3d at 205-06; *United States v. Ortiz*, No. 01 Cr. 9990 (MBM), 2002 WL 31427356, at *4 (S.D.N.Y. Oct. 20, 2002) (observing that this instruction "is a standard and correct statement of the law"); *cf. United States v. Saldarriaga*, 204 F.3d 50, 53 (2d Cir. 2000) (per curiam) ("[T]he government has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and . . . the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged.").  While the defense must of course be permitted to argue that the absence of certain kinds of evidence collected through specified means weakens the Government's case and supports a verdict of not guilty, defendants should not be permitted to argue or suggest to the jury that the Government's failure to adduce a particular kind of evidence (for example, incriminating recordings) compels a not guilty verdict as a matter of law.  Similarly, defendants should not be permitted to argue or suggest to the jury that the Government overreached by utilizing certain techniques to investigate what the defendants consider NCAA-rule breaking and non-criminal conduct.

## **CONCLUSION**

The Government respectfully submits that the Court should grant the Government's

motions *in limine*.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
    Robert L. Boone /Noah Solowiejczyk
    Eli J. Mark
    Assistant United States Attorneys
    (212) 637-2208/2473/2431

26