# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                  :
UNITED STATES OF AMERICA,                                         :
                                                                  :
 v.                                                          :
                                                                  :
MERL CODE, and                                                    :    Case No. 17-cr-00684-ER
CHRISTIAN DAWKINS,                                                :
                                                                  :
         Defendants.                :
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## GOVERNMENT'S OMNIBUS MOTIONS IN LIMINE


**NEXSEN PRUET LLC**
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211

**OGLETREE, DEAKINS, NASH, SMOAK**
**& STEWART, P.C.**
Merl F. Code
300 North Main Street
Greenville, South Carolina, 29601
(864) 271-1300

*Attorneys for Defendant Merl Code*

**HANEY LAW GROUP PLLC**
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470

*Attorneys for Defendant Christian Dawkins*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT ........................................................................................................................1

I.     MR. DAWKINS SHOULD BE PERMITTED TO RAISE AN ENTRAPMENT
DEFENSE. ..............................................................................................................1

        A.     The Propriety of an Entrapment Defense is Properly Addressed Upon the
Completion of Evidence at Trial Rather Than in a Pretrial Vacuum.......................2

        B.     Mr. Dawkins Can Satisfy His "Relatively Slight" Burden of Proving That the
Government Induced His Allegedly Criminal Behavior. ........................................3

        C.     Evidence Regarding Mr. Dawkins' Predisposition, or Lack Thereof, to Bribe
College Basketball Coaches is a Matter of Factual Dispute That Should be
Submitted to the Jury. ............................................................................................6

II.    IF MR. DAWKINS IS PERMITTED TO RAISE AN ENTRAPMENT DEFENSE, HE
WILL NOT OBJECT TO THE GOVERNMENT OFFERING EVIDENCE OF HIS
PRIOR CONDUCT IN *UNITED STATES V. GATTO* AS EVIDENCE OF
PREDISPOSITION..................................................................................................9

III.   DEFENDANTS SHOULD BE PERMITTED TO OFFER RELEVANT EVIDENCE TO
PROVE THAT THEY DID NOT INTEND TO JOIN THE CHARGED SCHEME.........9

IV.   NCAA'S RULES ON AMATEURISM. .......................................................................11

V.   IN THE EVENT THAT DEFENDANTS CHOOSE TO TESTIFY, THEN THE
GOVERNMENT WOULD BE ENTITLED TO INTRODUCE EVIDENCE OF THEIR
PRIOR CONVICTIONS IN *UNITED STATES V. GATTO*...............................................12

VI.   THE GOVERNMENT'S INVESTIGATIVE TECHNIQUES.........................................12

CONCLUSION.....................................................................................................................13

# TABLE OF AUTHORITIES

## Cases

*Black v. United States*, 309 F.2d 331 (8th Cir. 1962) .................................................................. 12

*Mathews v. United States*, 485 U.S. 58, 108 S. Ct. 883 (1988) ................................................ 2, 7

*Sorrells v. United States*, 287 U.S. 435, 53 S. Ct. 210 (1932) ................................................... 2

*United States v. Abdalla*, 346 F. Supp. 3d 420 (S.D.N.Y. 2018) ............................................... 3

*United States v. Anglada*, 524 F.2d 296 (2d Cir. 1975) ......................................................... 3, 8

*United States v. Bala*, 236 F.3d 87 (2d Cir. 2000) ................................................................... 4

*United States v. Blassingame*, 197 F.3d 271 (7th Cir. 1999) ..................................................... 4

*United States v. Bok*, 156 F.3d 157 (2d Cir. 1998) .................................................................. 12

*United States v. Brand*, 467 F.3d 179 (2d Cir. 2006) ...................................................... 4, 5, 7, 10

*United States v. Brown*, 411 F.2d 1134 (10th Cir. 1969) ......................................................... 12

*United States v. Dove*, 916 F.2d 41(2d Cir. 1990) ................................................................... 2

*United States v. Edwards*, 101 F.3d 17 (2d Cir. 1996) ............................................................ 14

*United States v. Gatto*, 17 Cr. 686 (LAK) ............................................................................. 1

*United States v. Glover*, 153 F.3d 749 (D.C. Cir. 1998) ........................................................... 6

*United States v. Hurtado*, 47 F.3d 577 (2d Cir. 1995) ....................................................... 2, 8, 9, 10

*United States v. Mayo*, 705 F.2d 62 (2d Cir. 1983) .................................................................. 8

*United States v. McKinley*, 70 F.3d 1307 (D.C. Cir. 1995) ........................................................ 6

*United States v. Ozsusamlar*, 428 F. Supp. 2d 161 (S.D.N.Y. 2006) .......................................... 12

*United States v. Riley*, 363 F.2d 955 (2d Cir. 1966) .............................................................. 3, 8

*United States v. Salerno*, 66 F.3d 544 (2d Cir. 1995) ............................................................... 7

*United States v. Sternstein*, 596 F.2d 528 (2d Cir. 1979) ......................................................... 12

*United States v. Williams*, 23 F.3d 629 (2d Cir. 1994) .................................................................. 4

*United States v. Young*, 78 F.3d 758 (1st Cir. 1996) .................................................................. 6

## Rules

Fed. R. Evid. 402 .................................................................................................................... 11, 13

Fed. R. Evid. 403 ........................................................................................................................ 13

Fed. R. Evid. 404 .................................................................................................................... 12, 13

Fed. R. Evid. 609(a)(2) ................................................................................................................ 14

## PRELIMINARY STATEMENT

Defendants Merl Code and Christian Dawkins (collectively "Defendants") respectfully submit this response in opposition to the Government's omnibus motions *in limine* ("Omnibus Motion"), which seeks rulings:

1. Precluding either defendant[1] from advancing a defense of entrapment or arguing that he was entrapped into bribing men's college basketball coaches;

2. Precluding the defendants from adducing evidence that they did not bribe uncharged men's college basketball coaches;

3. Precluding the defendants from adducing evidence and arguing the merits of the NCAA's amateurism rules and/or the pervasiveness of rule-breaking in college basketball;

4. Permitting the Government to admit evidence of the defendants' prior convictions in *United States v. Gatto*, 17 Cr. 686 (LAK) in the event either of the defendants testifies;

5. Precluding the defense from arguing that the Government overreached in utilizing undercover law enforcement officers and wiretaps in investigating the defendants, and/or the failure to obtain evidence from these investigative tools prevents the jury from finding guilt. (ECF No. 189 at 6).

## <u>ARGUMENT</u>

### I.    MR. DAWKINS SHOULD BE PERMITTED TO RAISE AN ENTRAPMENT DEFENSE.

"[C]ourts must be closed to the trial of a crime instigated by the government's own agents." *Sorrells v. United States*, 287 U.S. 435, 459, 53 S. Ct. 210, 219 (1932). Moreover, "[t]he

---

[1]    Mr. Code does not intend to advance an entrapment defense at trial.

question of entrapment is generally one for the jury, rather than for the court." *Mathews v. United States*, 485 U.S. 58, 63, 108 S. Ct. 883, 886 (1988). That is because a viable theory of defense "must be charged so long as it has 'some foundation in the proof, no matter how tenuous that defense may appear to the trial court.'" *United States v. Hurtado*, 47 F.3d 577, 584-85 (2d Cir. 1995) (quoting *United States v. Dove*, 916 F.2d 41, 47 (2d Cir. 1990) (emphasis added)). Nevertheless, the Government argues in its Omnibus Motion that Mr. Dawkins should be precluded from asserting the defense of entrapment because "(1) [he] can[not] meet his burden of establishing inducement, and (2) even if [he] could, the overwhelming and undisputed evidence of predisposition would foreclose such a defense." (ECF No 189 at 13). For the foregoing reasons, the Government's request should be denied.

### A. The Propriety of an Entrapment Defense is Properly Addressed Upon the Completion of Evidence at Trial Rather Than in a Pretrial Vacuum.

As an initial matter, the Government's request for a pretrial order precluding Defendants from asserting the defense of entrapment is premature. No authority cited in the Government's Omnibus Motion supports their extraordinary request. In fact, the request is contrary to a recently published order from the Southern District. *See United States v. Abdalla*, 346 F. Supp. 3d 420, 428 (S.D.N.Y. 2018). On this precise issue, the trial court in *Abdalla* wrote:

> The Government urges the Court to "preclude the [D]efendants from relying on the [entrapment] defense unless and until they proffer evidence to support such an argument." (Government Motion at 32 (emphasis added).) At this point, it is unclear whether the evidence presented at trial will be sufficient to establish the elements of an entrapment defense. That does not mean, however, that Defendants should be preemptively foreclosed from offering such evidence. ***Because the Court cannot determine at this time whether the Defendants will bear their burden of showing inducement, the Court denies as premature the Government's request to preclude an entrapment defense***. If at trial, however, the Defendants are unable to present evidence sufficient to support an entrapment defense, the Court will instruct the jury that entrapment is not a defense in this case.

346 F. Supp. at 428 (emphasis added).

2

Defendants do not contest the general proposition that defendants are not entitled to have the jury instructed on defenses for which there is no factual support. *See*, *e.g., United States v. Anglada*, 524 F.2d 296, 300 (2d Cir. 1975) (A court may decline an entrapment charge "when he believes the defense is concocted."); *but see United States v. Riley*, 363 F.2d 955, 959 (2d Cir. 1966) ("[A]ny evidence negating propensity . . . requires submission to the jury, however unreasonable the judge would consider a verdict in favor of the defendant to be."). However, the defendant's burden to establish inducement and the Government's corresponding burden to prove predisposition must be satisfied at trial, not by paper motion in a pretrial setting. *Abdalla*, 346 F. Supp. 3d at 428; *but see United States v. Blassingame*, 197 F.3d 271 (7th Cir. 1999) (approving, in *dicta*, a court's discretion to preclude entrapment if a defendant refuses the court's request for an offer of proof).

The Court should summarily deny the Government's request to preclude entrapment before trial even begins. If the Government is indeed convinced – as they claim in their Omnibus Motion – that entrapment is inapplicable, then they should have no trouble disproving the defense to the appropriate triers of fact; and they are not prejudiced by the Court allowing Mr. Dawkins to present his case to the jury as the Sixth Amendment requires.

**B.      Mr. Dawkins Can Satisfy His "Relatively Slight" Burden of Proving That the Government Induced His Allegedly Criminal Behavior.**

The entrapment defense has two elements: "(1) government inducement of the crime, and (2) lack of predisposition on the defendant's part." *United States v. Bala*, 236 F.3d 87, 94 (2d Cir. 2000) (citations omitted). The first element of the defense requires a defendant "to prove by a ***preponderance of the evidence*** the government's inducement to commit the crime." *United States v. Brand*, 467 F.3d 179, 189 (2d Cir. 2006) (quoting *United States v. Williams*, 23 F.3d 629, 635 (2d Cir. 1994) (emphasis added)). "[I]nducement includes soliciting, proposing,

initiating, broaching or suggesting the commission of the offense charged." *Brand*, 467 F.3d at

190 (citations omitted). Put another way, a defendant must establish that the prosecution set the

accused in motion. *Id.* While this "relatively slight" burden "should not be treated as a hollow

requirement[,] . . . a ***defendant's burden of proof on inducement may be relatively easily***

***satisfied***[.]" *Id.* (emphasis added).

The Government's investigation traces its origins to CW-1's promise to expose

corruption in NCAA men's basketball in exchange for leniency in his own criminal case. In May

of 2017, UC-1, UC-2, and CW-1 arranged a meeting with a number of individuals, including Mr.

Dawkins, to discuss starting a joint enterprise to provide financial services to college athletes

when they declared for the NBA draft. Mr. Dawkins was recruited to identify talented players

and leverage relationships to ensure that top professional prospects would retain the services of

the group upon their graduation from college. A meeting was held on a yacht, and involved Mr.

Dawkins leaving with a briefcase filled with $50,000.00 from the Government. As the financial

backers, UC-1 and UC-2 exerted control over the operation and repeatedly insisted that Mr.

Dawkins should pay assistant coaches in exchange for those coaches encouraging players to

become clients upon declaring for the NBA draft.

The Government's own undercover agents and cooperating witness solicited Mr.

Dawkins' involvement in a conspiracy ***they devised*** to pay bribes to college basketball coaches.

They then paid him $50,000.00 to do what he was told and not ask questions. Notwithstanding

any argument regarding Mr. Dawkins' predisposition, the defense can clearly meet its burden to

prove inducement at the outset.

Beyond the origins of Mr. Dawkins' involvement, there is also clear evidence that UC-1

***demanded*** that Mr. Dawkins pay coaches, even over Mr. Dawkins' objections. *See* ECF No. 186

4

at 10, ¶ 4 ("the July 28 telephone call"). Defendants have addressed the contents of this call at length in other filings and argue that UC-1's conduct far exceeds "inducement" and can be fairly characterized as coercive.

In its Omnibus Motion, the Government likens this case to several others where a court declined to find evidence of inducement. *See, e.g., United States v. Glover*, 153 F.3d 749, 755 (D.C. Cir. 1998) (holding that an entrapment instruction was not warranted where there was ***no evidence*** of "persuasive overtures"); *United States v. Young*, 78 F.3d 758, 761 (1st Cir. 1996) (finding no inducement where there was ***no evidence*** of "coercion"). A survey of their facts reveals them to be clearly distinguishable and thus minimally persuasive. In *United States v. McKinley*, 70 F.3d 1307, 1310 (D.C. Cir. 1995), the court highlighted that "***appellant himself initiated the issue*** of assisting the officer in purchasing drugs[,] . . . [and] ***there [was] no indication that appellant at any time indicated reluctance*** to facilitate the drug transaction." The facts in this case do not demand a similar result.

Any fair interpretation of the Government's case reveals that UC-1 – not Mr. Dawkins or Mr. Code – initiated the issue of making payments to college basketball coaches. Furthermore, UC-1 continued pressing that issue upon Mr. Dawkins even after Mr. Dawkins clearly indicated a reluctance to do so. (ECF No. 186 at 10, ¶ 4). Indeed, the July 28 telephone call evidences a persuasive attempt by UC-1 to coerce Mr. Dawkins into joining UC-1's scheme of paying college basketball coaches. The evidence at trial will easily satisfy Mr. Dawkins' "relatively slight" burden to establish inducement.

C.   **Evidence Regarding Mr. Dawkins' Predisposition, or Lack Thereof, to Bribe College Basketball Coaches is a Matter of Factual Dispute That Should be Submitted to the Jury.**

After a defendant meets his burden to establish inducement, the burden shifts to the Government to establish – ***beyond a reasonable doubt*** – that the defendant was predisposed to commit the crime. *Brand*, 467 F.3d at 189. "A defendant is predisposed to commit a crime if he is ready and willing without persuasion to commit the crime charged and awaiting any propitious opportunity to do so." *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir. 1995) (citations and quotations omitted). Predisposition may be shown by evidence of:

> (1) an existing course of criminal conduct similar to the crime for which the defendant is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement.

*Brand*, 467 F.3d at 191 (citations and quotations omitted).

 Whether the Government can affirmatively prove a Defendant's predisposition beyond a reasonable doubt is generally a matter for the jury to decide. *See Mathews*, 485 U.S. at 63; *see also Anglada*, 524 F.2d at 298 ("[T]o the extent that this evidence implied propensity, the argument was for the Government to make to the jury."). In discussing whether entrapment should be submitted to the jury, Judge Friendly wrote for the Second Circuit in *Riley* that the production of "***any evidence negating propensity, whether in cross-examination or otherwise, requires submission to the jury***, however unreasonable the judge would consider a verdict in favor of the defendant to be." 363 F.2d at 959 (emphasis added).

The lone exception to this general rule is where the Government "presents ***uncontradicted proof*** of predisposition." *Hurtado*, 47 F.3d at 585 (emphasis added). Removing entrapment from the jury's consideration when there is evidence of inducement is an exceptional

step, and is only appropriate if the defendant is unable to produce **any evidence** to contradict the Government's claim of predisposition. *United States v. Mayo*, 705 F.2d 62, 70 (2d Cir. 1983) ("[T]he entrapment defense will not go to the jury in the face of substantial evidence of propensity unless the defendant produces **some evidence to contradict** directly the prosecution's showing.") (emphasis added).

The cases discussing this exception arose from decidedly dissimilar factual situations than this case. In *Hurtado*, for example, the defendant was prosecuted for distributing heroin to an undercover agent and at trial "admitted to selling heroine on a number of occasions" prior to the transaction in question. 47 F.3d at 580. The Second Circuit agreed that because the Government's evidence that Hurtado was already engaged in the same criminal conduct prior to the inducement was "uncontradicted," and even conceded by the defendant, the entrapment defense was inapplicable. *Id.* at 585.

The Government's Omnibus Motion also advances several factual arguments regarding Mr. Dawkins' predisposition to pay bribes to college coaches. For the following reasons, Mr. Dawkins intends to dispute each argument at trial.

First, the Government argues that the conduct for which Mr. Dawkins was convicted in *Gatto* is sufficient to establish predisposition. (*See* ECF No. 189 at 12 n.3 ("[The *Gatto*] conviction . . . involved the defendants efforts to bribe the family of a high school student-athlete in order to attend the University of Louisville, which related to the defendants involvement in making a bribe payment to a University of Louisville coach, and occurred during the same general time period as many of the bribes at issue in this case.")). Contrary to the Government's position, the conduct for which Mr. Dawkins was convicted in *Gatto*, which was a wire fraud case, is separate and distinct from the conduct for which he is charged in this case (honest

services fraud). Indeed, making payments to the families of elite student-athletes, or using a college basketball coach as a vehicle to deliver such payments to those families, is entirely dissimilar from making a bribe payment to a college basketball coach so that the coach will steer his student-athletes to use Mr. Dawkins' services in the future. The Government's attempt to conflate these two issues falls flat and, whether intentionally or not, is misleading.

Second, the Government argues that evidence that Mr. Dawkins made payments to Lamont Evans before being recruited by UC-1 is strong evidence of an "already formed design." (ECF No. 189 at 12). But, in making that argument, the Government again improperly conflates the issue of making payments to the families of elite student-athletes with the issue of making bribe payments to college basketball coaches. In that instance, Mr. Dawkins was using Lamont Evans, who was then a coach at the University of South Carolina, as a vehicle to deliver payments ***to the family*** of a student athlete who was, at that time, a student-athlete on the University of South Carolina's basketball team. Again, making payments to the families of elite student-athletes – which was the focus in *Gatto* – is entirely dissimilar from the conduct charged in this case.

Lastly, the Government cannot plausibly allege that they could prove predisposition by proof of Mr. Dawkins' "ready response" to the inducement. *Brand*, 467 F.3d at 189. First, this argument would concede that Mr. Dawkins was, in fact, induced – a position the Government refutes elsewhere in their Omnibus Motion. Furthermore, the jury will hear ample proof that Mr. Dawkins strenuously objected, for various reasons, to the payment of college coaches in exchange for their promise to push clients to Munish Sood and UC-1. As discussed above, and in prior defense filings, the July 28 telephone call evidences Mr. Dawkins' resistance to UC-1's insistent desire to pay college basketball coaches. (ECF No. 186 at 10, ¶ 4). Indeed, Mr.

Dawkins' reaction to UC-1's inducement on the July 28 telephone call was anything but a "ready response."

In sum, Defendants do not disagree with the Government's contention that, "[w]here the Government's evidence of predisposition is uncontroverted, the defendant is precluded from offering an entrapment defense." (ECF No. 189 at 7); *Hurtado*, 47 F.3d 577, 585 (2d Cir. 1995). However, because Mr. Dawkins is able to produce evidence that contradicts the Government's evidence of predisposition, the Court should allow Mr. Dawkins to advance an entrapment defense at trial.

II.     **IF MR. DAWKINS IS PERMITTED TO RAISE AN ENTRAPMENT DEFENSE, HE WILL NOT OBJECT TO THE GOVERNMENT OFFERING EVIDENCE OF HIS PRIOR CONDUCT IN *UNITED STATES V. GATTO* AS EVIDENCE OF PREDISPOSITION.**

In its Omnibus Motion, the Government has indicated that it will seek to offer evidence of Mr. Dawkins' prior conduct in *Gatto* if the Court permits Mr. Dawkins to advance an entrapment defense. (ECF no. 189 at 14). Mr. Dawkins concedes that, assuming he is allowed to advance an entrapment defense, his prior conduct in *Gatto* would be relevant for the limited purpose of attempting to establish predisposition.

Regarding Mr. Code, the Government should not be allowed to offer his prior conduct in *Gatto* for this purpose because he does not intend to advance an entrapment defense at trial.

III.    **DEFENDANTS SHOULD BE PERMITTED TO OFFER RELEVANT EVIDENCE TO PROVE THAT THEY DID NOT INTEND TO JOIN THE CHARGED SCHEME.**

In Section III of its Omnibus Motion, the Government argues that the Defendants should be precluded from offering evidence that they dealt with men's basketball coaches who they did not bribe, as such evidence would constitute impermissible "good acts" evidence. (ECF No. 189 at 17). As the Government aptly put, the principle regarding the inadmissibility of evidence of

"every bank a defendant didn't rob" is "rather elementary." *Id.* at 18. Of course, the principle regarding relevant evidence being admissible is likewise rather elementary, *see* Fed. R. Evid. 402, as is the principle that a criminal defendant must possess the requisite *mens rea* to be found guilty.

Contrary to the Government's argument that "evidence of potentially non-criminal dealings with other coaches is wholly irrelevant to any issue in dispute at trial," (ECF No. 189 at 20), such evidence is directly relevant to the ***critical*** issue in dispute at trial (*i.e.*, whether Defendants intended to participate in a scheme to make bribe payments to college basketball coaches). Indeed, the Government's contention that the introduction of such evidence would "needlessly complicate and lengthen the trial" with "non-germane issues" is confounding. *Id.* Courts have repeatedly observed that in cases where a "critical element" at trial is the "mental state of the defendant," the defendant "is entitled to wide latitude in the introduction of evidence which tends to show lack of specific intent." *United States v. Sternstein*, 596 F.2d 528, 530 (2d Cir. 1979) (introduction of tax records that showed no error held to be relevant to prove that false records were the result of innocent mistakes) (citing *United States v. Brown*, 411 F.2d 1134, 1137 (10th Cir. 1969); *Black v. United States*, 309 F.2d 331, 337 (8th Cir. 1962)).

Additionally, while FRE 404(b) prohibits the introduction of other acts "to prove a person's character," such acts are admissible to prove a defendant's intent. Indeed, it is "well settled that evidence of prior acts may be admitted to show a defendant's . . . intent." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 165-66 (S.D.N.Y. 2006) (citing *United States v. Bok*, 156 F.3d 157, 165-66 (2d Cir. 1998)). For example, evidence that Mr. Dawkins cultivated and maintained relationships with head coaches (coaches that have significantly more influence than the assistant coaches the Government alleges that he paid bribes to), and that he did not pay for

their influence, directly contradicts his specific intent to pay college coaches in exchange for influence over athletes. Such an argument is permitted under the rules because it is logically independent of the so-called "conformity with character" inference that is prohibited by Rule 404.

In addition to their argument that Defendants' evidence is prohibited because of its nature, the Government's Omnibus Motion goes on to argue that it is also "irrelevant and inadmissible under Rule 402 and Rule 403." (ECF No. 189 at 20). The ferocity of the Government's objection to this evidence thoroughly belies their claim that it is irrelevant. If the evidence is not probative of innocence, and therefore relevant, then the Government has no reason to be concerned by its introduction. More plausibly, the obvious relevance this evidence has upon Defendants' lack of intent is what inspires the Government's objection.

## IV.    NCAA'S RULES ON AMATEURISM.

The Government's Omnibus Motion argues for a categorical prohibition on "attempting to garner the sympathy of the jury[.]" (ECF No. 189 at 22). In support of their fear of nullification arguments, the Omnibus Motion cites a number of quotes from Mr. Gatto's attorney in 17-cr-686, which the Government found objectionable, as well as comments made by defense counsel for Mr. Dawkins that this trial will "pull back the curtains" on the sport.[2] *Id.* at 21 n.5; *see also id.* at 22. The Omnibus Motion goes on to suggest that counsel for the Defendants will "attempt to elicit similar evidence, . . . although it would be not at all germane to the charged bribery offenses." *Id.* at 22.

---

[2]    It bears mentioning that this prosecution is the result of an undercover FBI operation whose ***purpose was to expose misconduct in college basketball***.

In response, Defendants respectfully assert that they are aware of their respective professional obligations and will not seek to obtain a favorable verdict by means of nullification. A request for nullification is, in essence, an argument to ignore the law. *See United States v. Edwards*, 101 F.3d 17, 19 (2d Cir. 1996) ("[W]hile jurors have the power to ignore the law in their verdicts, courts have no obligation to tell them they may do so."). Far from desiring nullification, the Defendants believe that if the jury applies the available facts to the relevant law, a not guilty verdict is the appropriate and probable outcome.

Defendants ask that the Court take no action on Argument IV from the Government's Omnibus Motion. Defendants do not believe that any of their arguments at trial will gratuitously inject irrelevant issues or demand an acquittal upon improper grounds.

## V.     IN THE EVENT THAT DEFENDANTS CHOOSE TO TESTIFY, THEN THE GOVERNMENT WOULD BE ENTITLED TO INTRODUCE EVIDENCE OF THEIR PRIOR CONVICTIONS IN *UNITED STATES V. GATTO.*

In Section V of its Omnibus Motion, the Government asks that it be permitted to impeach Mr. Code and/or Mr. Dawkins pursuant to Rule 609(a)(2) in the event that Mr. Code and/or Mr. Dawkins testifies at trial. (ECF No. 189 at 28). Defendants do not contest the well-established nature of Rule 609(a)(2) and the Government's ability to impeach a testifying witness with his prior criminal convictions.

## VI.     THE GOVERNMENT'S INVESTIGATIVE TECHNIQUES.

The Government's Omnibus Motion argues that Defendants "should not be permitted to argue or suggest to the jury that the Government's failure to adduce a particular kind of evidence . . . compels a not guilty verdict as a matter of law." (ECF No. 189 at 25). In addition, the Government also argues that Defendants "should not be permitted to argue or suggest to the jury

that the Government overreached by utilizing certain techniques to investigate what the defendants consider NCAA-rule breaking and non-criminal conduct." *Id.*

As detailed in Section IV, *supra*, Defendants respectfully assert that they are aware of their respective professional obligations and do not intend to put the Government's investigation on trial. Defendants therefore ask that the Court take no action on Argument VI from the Government's Omnibus Motion, as they do not believe that any of their arguments at trial will inject irrelevant issues or improperly put the Government's investigation on trial.

## **CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court rule that:

1. Mr. Dawkins is permitted to raise an entrapment defense at trial;

2. Mr. Dawkins' prior conduct in *United States v. Gatto* is relevant for the limited purpose of attempting to establish predisposition; and

3. Defendants are permitted to offer evidence that they had relationships with other coaches who they did not bribe, as such evidence is relevant to Defendants' respective states of mind.

*[SIGNATURE PAGE FOLLOWS]*

13

Dated:  New York, New York
        April 12, 2019


**NEXSEN PRUET LLC**                            **HANEY LAW GROUP PLLC**

<u>s/ Mark C. Moore</u>                         <u>s/ Steven A. Haney</u>
William W. Wilkins                              Steven A. Haney
Mark C. Moore                                   3000 Town Center Drive, Suite 2570
Andrew A. Mathias                               Southfield, Michigan 48075
55 E. Camperdown Way, Suite 400                 (248) 414-1470
Greenville, South Carolina 29601
(864) 370-2211                                  *Attorneys for Defendant Christian Dawkins*

**OGLETREE, DEAKINS, NASH, SMOAK**
**& STEWART, P.C.**
Merl F. Code
300 North Main Street
Greenville, South Carolina, 29601
(864) 271-1300

*Attorneys for Defendant Merl Code*


14