

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 25, 2019

**BY ECF AND E-MAIL**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:  *United States v. Dawkins and Code,* S1 17 Cr. 684 (ER)

Dear Judge Ramos:

The Government respectfully writes in response to the letter motions filed this evening seeking to "move to preclude the Government from asking its witnesses to opine as to what Mr. Code [and Mr. Dawkins] 'meant' by any of the statements contained in the Government's exhibits." (Dkt. No. 222, at 1 (hereinafter "Code Ltr."); Dkt. No. 223, at 1 (hereinafter "Dawkins Ltr.")). Defendant Dawkins further requests that the Court strike all such testimony previously offered. Consistent with the Court's prior rulings, the defendants' motions should be denied.

During direct examination, Martin Blazer has testified about his understanding of recorded statements made by other participants in those meetings, including by Dawkins and Code. His understanding of the statements of other participants in those meetings, including statements by Dawkins, Code and other coconspirators are admissible, and helpful to the jury, because they are rationally based on Blazer's own first-hand perceptions as a participant in that meeting.

As this Court is aware, and as this Court has ruled, it is an entirely proper and uncontroversial practice for a witness who is himself a participant in a conversation to provide his own *understanding* of what certain statements made by other participants in that conversation meant. Such lay opinion testimony is admissible if it is "(a) based on the witness's first-hand perceptions and (b) rationally derived from those first-hand perceptions." *United States v. Kaplan*, 490 F.3d 110, 119 (2d Cir. 2007). Both of those requirements are easily met here.

As to the first requirement, Mr. Blazer's testimony has been limited to conversations that he personally participated in. Accordingly, Blazer's testimony is based on Blazer's own first-hand perceptions as a participant in those conversations, and this includes the June 20, 2017 meeting with Merl Code, Christian Dawkins, and others. *See United States v. Lumiere*, 249 F. Supp. 3d 748, 755 (S.D.N.Y. 2017) ("As a participant in the conversation, Thorell plainly had first-hand knowledge of the conversation itself" (citing *United States v. Urlacher*, 979 F.2d 935, 939 (2d Cir. 1992) ("[T]he first prong requires that witness meet the familiar requirement of first-hand knowledge or observation." (internal quotation marks omitted))).

Page 2

As to the second requirement, Blazer's own understanding of the meaning of the statements made by Code, Dawkins and others during conversations he had with them is "rationally derived from those first-hand perceptions." Permitting Mr. Blazer's testimony in this regard is particularly appropriate here because the recorded conversation of the June 20, 2017 meeting with Code (which prompted Code's objection at the end of the trial day) -- as is true for many of the other recorded conversations that the Government has already offered into evidence and will continue to offer during its case in chief -- is filled with disjointed and, at times, unclear language, as well as terminology specific to the sports industry. The Government respectfully submits that these conversations will be confusing to the jury absent the ability of Mr. Blazer to explain the meaning of the words used – an understanding that he gained from numerous conversations with members of the alleged conspiracy, including Christian Dawkins and Lamont Evans, among other others. *See, e.g., Yannotti*, 541 F.3d at 126 (upholding admission of "interpretative testimony because the language on the tape was punctuated with ambiguous references to events that are clear only to the conversants" (alterations, ellipsis, and internal quotation marks omitted)); *Lumiere*, 249 F. Supp. 3d at 756; *United States v. Ghavami*, 23 F. Supp. 3d 148, 171 (S.D.N.Y. 2014) ("Zaino's decoding testimony was helpful to the jury, who could not have been expected to appreciate the meaning of ambiguous terms and phrases without context"), *aff'd sub nom. United States v. Heinz*, 607 F. App'x 53 (2d Cir. 2015). Code's argument that Blazer who, as he has testified, was a participant in these conversations and has years of prior relevant career experience, including personal involvement in seeking to recruit college athletes as clients through illicit payments to these players and their families, is "*no better suited than the* jury," to interpret the meaning of the conversations at-issue, (Code Ltr., at 2), is thus, unpersuasive. *See also* Dawkins Ltr. at 3 (same). In addition, by June of 2017, Blazer had been participating in the Government's investigation of corruption in college basketball for over two years, and had developed an in-depth knowledge of amateur basketball, and various financial dealings, including corrupt ones, involving the sport, through participating in dozens of conversations with Dawkins and other alleged co-conspirators, including Lamont Evans, regarding making payments to coaches, the families of players, and other individuals associated with these college players, which helpfully, for the jury, informs his understanding of statements by participants in the conspiracy.[1]

Defendant Code's specific objection to Blazer's interpretation of statements made by Code during the June 20, 2017 meeting -- which they both participated in -- because Blazer did not know Code is meritless. (Code Ltr. at 3). By June of 2017, as a result of his ongoing cooperation with the Government's investigation and his conversations with certain of Code's alleged co-conspirators, Blazer was intimately familiar with the inner workings of the conspiracy that the Government alleges Code joined, and of which Dawkins was a longtime member. Accordingly, Blazer is well situated to provide his own understanding of the meaning of both Code's and Dawkins' own statements, as well as those of other meeting participants. *See, e.g., United States v. Yannotti*, 541 F.3d 112, 125 (2d Cir. 2008) ("DiDonato's testimony was rationally based on his own perception because it derived from his direct participation in the

---

[1] The fact that at the time Blazer participated in these conversations he was acting as an agent of the Government, as the defendants point out, is irrelevant to the analysis under Rule 701. *See* Code Ltr. at 1; Dawkins Ltr. at 2 ("As a cooperating witness, Mr. Blazer is not a true conspirator, so … his personal interpretation of the evidence is [not] relevant."). The defendants point to no authority suggesting that Rule 701 is only applicable to a participant of a meeting who, at the time of the conversation, is a co-conspirator.

loansharking activities of the charged enterprise ...."); *Lumiere*, 249 F. Supp. 3d at 755 ("Thorell not only had firsthand knowledge of what was actually said, but firsthand knowledge of the underlying scheme sufficient to interpret the statements of his former partner-in-crime."). For these reasons, the Government may – and regularly does at trials involving recordings – elicit lay opinion testimony of this nature from a witness who has gained knowledge about such matters from personal participation in the events at issue, as is the case in this instance. *See* Fed. R. Evid. 701; *see also Urlacher,* 979 F.2d at 939 ("Ruffin, as a participant in the conversations, had first hand knowledge of the conversations. Furthermore, his testimony was helpful to the jury's understanding of the often confusing and disjointed discussions on the tapes.").[2]

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:    ___/s/_____
Robert L. Boone/Noah Solowiejczyk
Eli J. Mark
Assistant United States Attorneys
(212) 637-2208/2473/2431

cc:    Defense Counsel (by ECF)

---

[2] Finally, while the Government has not yet had an opportunity to read all of the cases cited by the defendants' letter motion filed this evening, it appears that certain of the cases that the defendants cite are readily distinguishable. Those cases involved a case agent offering interpretation of the meanings of recorded conversations to which he was not a participant. For example, the defendants' rely heavily on *United States v. Jackson*, 849 F.3d 540, 553 (3d Cir. 2017), in which the Government called a case agent to "interpret[ ] the meaning of certain intercepted telephone calls" to which he was not a participant. This is not so in the case of Mr. Blazer, who was a participant in the calls and meetings that he is interpreting.