

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 30, 2019

**BY ECF**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    <u>United States v. Christian Dawkins and Merl Code</u>,
              No. S1 17 Cr. 684 (ER)

Dear Judge Ramos:

      As the Court is aware, defendant Merl Code has issued subpoenas for four FBI special agents: Special Agent John Vourderis, Special Agent Scott Carpenter, and the two undercover agents operating under the names "Jeff D'Angelo" ("UC-1") and "Jill Bailey" ("UC-2"). Special Agent Carpenter was one of the case agents assigned to the investigation, from approximately November 2016 until approximately July 2017. Special Agent Vourderis served as one of the case agents from approximately August 2017 to the present.[1] From approximately May 2017 to approximately July 2017, UC-1 posed as a financial backer for Dawkins's new sports management business, and UC-2 posed as a financial backer in the investigation until September 2017. The investigative steps taken by the FBI, in connection with the defendants in this case, were captured in recordings that have been presented in this case.

      By email today, defendant Code informed the Government that:

> I place you on notice that I intend to ask these agents, among other things, about their interactions with Mr. Blazer and their instructions to him as to how he was to operate as a cooperating criminal. I would also intend to explore the issue of whether exculpatory information was withheld from the grand juries that charged these defendants.

---

[1] Prior to November 2016, the case was being investigated solely by the Special Agents for the U.S. Attorney's Office for the Southern District of New York, and those agents supervised Louis M. Blazer, the cooperating witness.

The Government respectfully submits that the proffered questioning would elicit testimony that is generally irrelevant to this case, *see* Fed. R. Evid. 401, and, to the extent it has any limited probative value, such probative value would be substantially outweighed by the risk of unfair prejudice, confusing the issues, presenting cumulative evidence, and wasting the jury's time. *See* Fed. R. Evid. 403.

As noted, Code purports to identify two areas of questioning for the four identified FBI agents: (1) the agents "interactions with" and "instructions to" Blazer during the investigation, and (2) details about the evidence presented to the grand jury in this case. Neither area is of any relevance to the issues properly before the jury. With respect to the first category, the defendants offer no theory of how or why the agents' interactions with or instructions to Blazer – all of which would have occurred outside of the presence of the defendants – are of any relevance to this case. That is particularly true given that all of Blazer's investigative activities – *i.e.*, those activities that would have been the product of any interactions and instructions -- were recorded, and the recordings themselves have been played in this case. Moreover, any limited probative value that might exist is substantially outweighed by the risk of wasting the jury's time given, among other things, that the defendants have already had an opportunity to explore this subject – and, in particular, any instructions the agents provided Blazer -- during the cross-examination of Blazer himself. *See, e.g.,* Trial Tr. 539-542.

Finally, to the extent the real point of any such questioning would be to probe the agents' motives or intent in conducting the investigation – by, for example, suggesting that Code "had so little to do with" the case (Trial Tr. at 542), which was why Blazer was not asked to contact Code directly – that would be similarly irrelevant. As other courts have correctly concluded, in particular, "any attempt by [the defendants] to dissect an individual law enforcement agent's state of mind during the course of the investigation, or to belabor the details of the investigation's chronological development, would be irrelevant to the central question of [the defendants'] guilt or innocence, and as such, is inadmissible." *United States v. Demosthene*, 334 F. Supp.2d 378, 380 (S.D.N.Y. 2004) (citing *United States v. Reyes*, 18 F.3d 65, 71 (2d Cir. 1994)).[2]

With respect to the second area of proffered testimony, the defendants again offer no theory of how or why the scope of evidence presented to the grand jury is of any relevance to the work of the petit jury. Indeed, the very subject – proceedings before the grand jury – is not even an appropriate area of inquiry outside the presence of the jury, because it is well established that grand jury proceedings are "accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 301 (1991). As such, "[m]ere speculation that the

---

[2] Similarly, to the extent the defendant is attempting to elicit evidence, as was suggested during a phone call tonight with defense counsel, specifically, that a law enforcement agent supposedly had a particular state of mind – at a particular moment in time -- on whether there was an agreement reached with Code to bribe coaches is what the defense attempts to elicit, that evidence would be inadmissible for the same reasons discussed above. Further, the agents are not a party to the conspiracy, and their opinion on the ultimate issue to be determined by the jury is irrelevant under Rule 401 and a waste of time, and likely would lead to confusion of the issues, under Rule 403.

grand jury may have heard insufficient evidence . . . falls far short of the showing to overcome the presumption of secrecy." *United States v. Forde*, 740 F. Supp. 2d 406, 414 (S.D.N.Y. 2010); *see also United States v. Muse*, No. 06 Cr. 600 (DLC), 2007 WL 391563, at *10 (S.D.N.Y. Jan. 30, 2007) ("Review of a facially valid indictment is extremely circumscribed and does not include a challenge based on the contention that unreliable evidence was presented to the Grand Jury.").

Here, the defendants have made no such showing and, far more importantly, have made no showing at all as to how or why such subjects are relevant to the trial.  The grand jury is likely a largely foreign concept to many of the trial jurors and its work – which, as noted above, is shrouded by law in secrecy – is of no relevance of the work of the trial jury.  Indeed, even assuming *arguendo* that the defendants could articulate some theoretical relevance to such testimony (which the Government would strongly dispute), any such probative value would be substantially outweighed by the risk of juror confusion and a waste of the jury's time.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:
_____/s/_____
Robert L. Boone/Noah Solowiejczyk
Eli J. Mark
Assistant United States Attorneys
(212) 637-2208/2473/2431

cc: Defense counsel (by ECF)