UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                            Plaintiff,

            – against –

CHRISTIAN DAWKINS and MERL CODE,

                            Defendant.

**OPINION**

17 Crim. 684 (ER)

---

Ramos, D.J.:

Defendants Christian Dawkins and Merl Code were charged in a six-count superseding indictment with conspiracy and substantive offenses relating to bribery and wire fraud.  The charges arose from an alleged scheme involving the payment of bribes by Defendants to the assistant men's basketball coaches at various National Collegiate Athletics Association ("NCAA") Division I universities.  Doc. 177 ¶ 1.  Defendants and the Government brought several pretrial motions in advance of trial.  Defendants moved to suppress evidence collected from wiretaps and cell phone records.  Additionally, Defendants sought a bill of particulars and the production of evidence obtained in discovery in a related case.  The Government moved to preclude Defendants from raising an entrapment defense at trial.  For the reasons set out below, the parties' motions were uniformly DENIED.

## I.      BACKGROUND

A grand jury returned the superseding indictment in this case on March 7, 2019.  *See* Doc. 177.  The indictment contains six counts.  The first two counts charged Dawkins and Code with paying, and conspiring the pay, bribes or gratuities to various NCAA Division I basketball

coaches in order to influence or reward the coaches to or for referring promising student athletes to use Dawkins' services, in violation of 18 U.S.C. §§ 2, 371, 666(a)(2). *Id.* ¶¶ 40–45. The third count charged Dawkins and Code with conspiring to commit honest services fraud against some of the universities who employed the coaches they allegedly bribed. *Id.* ¶¶ 46–48. The fourth and fifth counts, which are only against Dawkins, charged him with actually committing honest services fraud against the University of South Carolina, Oklahoma State University, and University of Arizona, in violation of 18 U.S.C. §§ 1343, 1346, 2. *Id.* ¶¶ 49–52. The sixth and final count charged Dawkins and Code with conspiring to violate the Travel Act.

The parties brought multiple pretrial motions. On December 3, 2018, Defendants moved to suppress the wiretap and cell phone evidence in the case. Doc. 124, 128. Defendants also requested a bill of particulars and the production of discovery materials in a related case. Doc. 125. On April 5, 2019, the Government submitted an omnibus memorandum of its pretrial motions, which included its motion to preclude Defendants from raising an entrapment defense. Doc. 189. On April 19, 2019, the Court ruled on the parties' pretrial motions via oral order and indicated that a written opinion would follow.[1] This is that opinion. Trial commenced on April 22, 2019, and the jury returned its verdict on May 8, 2019.

## II.   DEFENDANTS' MOTION TO SUPPRESS WIRETAP EVIDENCE

### A.   *Background*

On April 7, 2017, the Government submitted an application to the Hon. George B. Daniels of the District Court of the Southern District of New York seeking to put a wiretap on

---

[1] The parties made additional pretrial motions along with the motions addressed in this opinion. *See, e.g.*, Doc. 125 (moving for early disclosure of *Brady* and *Giglio* material); Doc. 189 (moving to preclude Defendants from offering "good act" evidence that they did not engage in criminal conduct with certain coaches). The Court summarily ruled on these motions via oral order on April 19, 2019. *See* Doc. 229. The Court will not address those motions in this opinion; the Court resolved those motions for the reasons stated at the April 19th conference.

the cell phone of Munish Sood for a thirty-day period.  The application identified Dawkins as one of the target individuals and listed the target offenses as wire fraud, conspiracy to commit wire fraud, violation of the Travel Act, and conspiracy to violate the Travel Act.

The application included a sworn affidavit from an FBI agent involved in the investigation that preceded these charges and a letter from Deputy Assistant Attorney General Trevor N. McFadden indicating that he approved the application.  The application was granted on the same day.  However, the order granting the application and authorizing the wiretap failed to identify the Department of Justice official who authorized the Government's application, Trevor McFadden.  Instead, the order stated, "this Application has been authorized by **[FILL IN]**, Acting Deputy Assistant Attorney General."  Based on communications obtained pursuant to the order, the Government renewed the wiretap on Sood's phone and submitted subsequent successful applications for wiretaps on Dawkins', Code's, and former co-defendant Emanuel Richardson's phones.

B.    *Legal Standard*

Title III directs the method by which applications for the interception of wire, oral, or electronic communications must be made.  *See* 18 U.S.C. §§ 2510–18.  It also provides certain requirements for court orders authorizing interceptions.  Specifically, § 2518(4) provides that "[e]ach order authorizing or approving the interception of any wire, oral, or electronic communication under this chapter shall specify," among other things, "the identity of the agency authorized to intercept the communications, and the person authorizing the application" for interception.  Title III provides a statutory suppression remedy such that any "aggrieved person in any trial, hearing, or proceeding in or before any court . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence

3

derived therefrom," on any of three grounds:  first, that "the communication was unlawfully intercepted"; second, that "the order of authorization or approval under which it was intercepted is insufficient on its face"; and third, that "the interception was not made in conformity with the order of authorization or approval."  18 U.S.C. § 2518(10).

C.     *Discussion*

Defendants moved to suppress the communications obtained pursuant to the April 7, 2019 wiretap and all subsequent wiretaps that relied upon information it uncovered.  Defendants presented three grounds upon which to suppress the April 7 wiretap order:  first, that the wiretap order was facially insufficient; second, that the wiretap order was not supported by probable cause; and third; that the wiretap order was not necessary because the government was already using a cooperating witness.  The Court rejected all three arguments.  Additionally, the Court found that, even if certain defects in the wiretap order exist, suppression would be unwarranted because law enforcement agents relied upon the wiretap order in good faith.

1.     The April 7 Wiretap Order Was Not Facially Insufficient

Defendants argued that the April 7 Wiretap order is "facially insufficient" because it failed to identify by name the Justice Department official who authorized the wiretap application. Defendants urged the Court to follow *United States v. Glover*, 736 F.3d 509 (D.C. Cir. 2013), which held that "suppression is the mandatory remedy" where a wiretap order is "facially insufficient," *id.* at 513; *see also United States v. Scurry*, 821 F.3d 1, 8 (D.C. Cir. 2016).  The Government argued that the failure to include the official's name did not compel suppression of the wiretap evidence.

The Court held that while the April 7 wiretap order failed to identify the authorizing official, the order was based upon an application that correctly identified the official.  Even

assuming that the order was facially insufficient, suppression would be unwarranted.  The Court agreed with those circuits that have found the failure to identify or misidentification of a wiretap application's authorizing official to be a facial insufficiency under § 2518(10)(a)(ii) that need not be suppressed where an authorizing official in fact existed.  These include the Third Circuit, *United States v. Acon*, 513 F.2d 513, 518 (3d Cir. 1975), the Eighth Circuit, *United States v. Lomeli*, 676 F.3d 734, 741 (8th Cir. 2012), the Ninth Circuit, *United States v. Swann*, 526 F.2d 147, 149 (9th Cir. 1975), and the Tenth Circuit, *United States v. Radcliff*, 331 F.3d 1153, 1162 (10th Cir. 2003).  While § 2518(10)(a) grants the right to an aggrieved party to move to suppress the contents of a wire obtained on certain grounds, including that the order was facially insufficient, it does not require that contents from all such wires must automatically be suppressed.

    2.    <u>The April 7 Wiretap Order was Supported by Probable Cause</u>

Defendants argued that the April 7 wiretap order was not supported by probable cause that Dawkins was committing any of the target offenses.  The Government argued that the order was supported by probable cause to believe that Dawkins was paying bribes that caused certain coaches to violate their duties to their respective universities, thereby committing honest services wire fraud.

A judge reviewing a wiretap application must find probable cause for the belief that:  (a) an individual is committing, has committed, or is about to commit a particular enumerated offense; (b) particular communications concerning that offense will be obtained through the requested interception; (c) normal investigative procedures have been attempted and have failed or reasonably appear too dangerous or likely to fail; and (d) the facilities from which communications are to be intercepted are being used in connection of such offense or are

commonly used by the individual.  18 U.S.C. § 2518(3).  Probable cause for a wiretap order exists "when the facts made known to the issuing court are sufficient to warrant a prudent [person] in believing that evidence of a crime could be obtained through the use of electronic surveillance."  *United States v. Ruggiero*, 824 F. Supp. 379, 398 (S.D.N.Y. 1993) (internal quotation marks removed).  Once a wiretap order has been issued, the order is "entitled to a presumption of validity."  *United States v. Ambrosio*, 898 F. Supp. 177, 181 (S.D.N.Y. 1995).  A reviewing court must consider whether the issuing judicial official had a "substantial basis" for finding that probable cause existed.  *United States v. Wagner*, 989 F.2d 69, 72–74 (S.D.N.Y. 1993); *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The Court found that probable cause existed to believe that the defendants were committing honest services wire fraud.  The Government's application included an affidavit describing recorded phone calls involving Dawkins and a confidential witness discussing the alleged bribery scheme and meetings in which the witness provided coach Lamont Evans with the cash bribes.  It also included detailed allegations regarding phone calls between Sood and the confidential witness regarding anticipated meetings with two coaches in Las Vegas to determine if they would be willing to accept money in exchange for directing players to retain the services of Sood and Dawkins.

Defendants argued that honest services wire fraud was not one of the target offenses in the application.  In fact, the application listed wire fraud under 18 U.S.C. § 1343 as a target offense.  Honest services fraud, which is defined in 18 U.S.C. § 1346, is one type of "scheme or artifice to defraud" that is prohibited in § 1343.  Therefore, by identifying § 1343 as a target offense, honest services wire fraud is also identified as a target offense.

Defendants further argued that because the Government's theory of wire fraud in the wiretap application did not involve a monetary loss to a victim that was "the mirror image of" the defendant's gain, Doc. 130 at 18 (quoting *Skilling v. United States*, 561 U.S. 358, 400 (2010)), it is a defective theory of wire fraud and thus cannot establish probable cause.  But as *Skilling* noted, honest services wire fraud targets corruption that specifically lacks symmetry in gain and loss between the purported beneficiary and victim.  In a case of honest services wire fraud, "the betrayed party suffered no deprivation of money or property."  *Skilling*, 561 U.S. at 400.  Thus, the April 7 order was supported by probable cause that Dawkins was engaging in wire fraud.

       3.       <u>The April 7 Wiretap Order Was Necessary</u>

Defendants argued that all communications intercepted pursuant to the April 7 Wiretap Order should be suppressed on the grounds that the wiretap was unnecessary given the Government's engagement with a cooperating witness.

A judge may grant a wiretap order if, among other requirements, the judge determines that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(3)(c).  The requirement that applicants submit evidence of necessity is designed to prevent the use of wiretapping in situations in which traditional methods would suffice.  *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974).  However, the Second Circuit has clarified that the necessity requirement does not require that the government exhaust all other possible methods of investigations before applying for a wiretap.  *United States v. Diaz*, 176 F.3d 52, 111 (2d Cir. 1999) (citing *United States v. Torres*, 901 F.2d 205, 231 (2d Cir. 1990)).  Instead, applicants must provide a "basis for

concluding that less intrusive investigative procedures are not feasible." *United States v. Lilla*, 699 F.2d 99, 103 (2d Cir. 1983).

The Government's April 7 wiretap application included over thirteen pages outlining the applicants' rationale behind the need for a wiretap. The application provided a basis for concluding that less intrusive methods, including the use of physical surveillance and analysis of telephone records, were insufficient given the nature of the investigation. While Defendants contended that the Government could have relied upon its cooperating witness to record conversations, rather than petitioning for a wiretap, it clearly would not have been feasible for the cooperating witness to record conversations in which he did not participate. Therefore, the application met the requirement of necessity by providing a basis for the issuing judicial officer to conclude that the nature of the current case is such that neither the use of a single cooperating witness nor less intrusive investigative procedures would have been feasible.[2]

---

[2] The Government argued that even if Defendants' arguments were meritorious, suppression would not be warranted because law enforcement agents acted in good faith in relying upon the April 7 order. Although the Second Circuit has not directly spoken on the issue, multiple courts in the Second Circuit have held that the good-faith exception to the exclusionary rule applies to Title III wiretaps. *See United States v. Bellomo*, 954 F. Supp. 630, 638 (S.D.N.Y. 1997) (collecting cases). This Court sees no reason to depart the reasoning of those courts. Accordingly, the wiretap evidence would not have been suppressed. *Cf. United States v. Leon*, 468 U.S. 922–25 (1984) (holding that evidence obtained from a search warrant which is later found to have been issued without probable cause will be suppressed only if: (1) the issuing judge abandoned his detached, neutral role; (2) the agent was dishonest or reckless in preparing the supporting affidavit for the order; or (3) the agents' reliance on the warrant was not reasonable)).

None of these conditions were met. Defendants submitted no evidence to suggest that the judicial officials who issued the wiretap orders acted inappropriately or abandoned their "detached, neutral role." Defendants also failed to provide evidence to suggest that the agents misled the issuing judges, as Defendants do not claim that the "technical error" in the April 7 Order was committed intentionally. Finally, Defendants failed to dispute that law enforcement agents reasonably relied upon the fact that an authorized judicial official had reviewed the government's application, and approved the wiretap order based on the application.

Defendants also requested transcripts of the Grand Jury's proceedings to determine the extent to which they were indicted on the basis of communications obtained pursuant to the April 7 wiretap order. Where an indictment is based "almost exclusively" on evidence obtained from an invalid wiretap, dismissal is appropriate. *United States v. Tane*, 329 F.2d 848, 854 (2d Cir. 1964). Because no basis exists to suppress the wiretap evidence however, no basis exists to provide the jury transcripts to Defendants.

### III.   DEFENDANTS' MOTION TO SUPPRESS EVIDENCE OBTAINED FROM THEIR CELL PHONES

A.   *Background*

Law enforcement agents arrested Dawkins on September 25, 2017 and Code on September 26, 2017.  Dawkins and Code each had two phones on them at the time of arrest. Their phones were seized incident to their arrests.

On October 6, 2017 and November 3, 2017, the Government applied for warrants to search each of the four seized phones.  In support of the application to search the two Dawkins phones, the Government attached an affidavit by an FBI Special Agent.  The affidavit stated that Dawkins had been recorded making incriminating statements on one of the phones, which was subject to a wiretap, and had the other phone in his possession while he was en route to a meeting with alleged co-conspirators.  In support of the application to search the two Code phones, the Government attached an affidavit by another FBI agent.  That affidavit stated that Code was repeatedly recorded using one of his phones to communicate regarding the target offenses and was recorded making references to a text message Dawkins had sent Code. Regarding the second phone, the affidavit stated that Code and Dawkins had discussed payments to be made in furtherance of the target offenses on the phone.  The agent also stated in the affidavit that, based on his training and experience, cell phones that had been used to call others about fraud schemes often contained records of the fraud scheme, including those stored in call logs, voicemail messages, text messages, and email correspondences.

Both affidavits stated that law enforcement personnel would use the warrants to review only the responsive parts of the electronically stored information ("ESI") on the phones. However, they also stated that "depending on the circumstances," law enforcement officers

might "need to conduct a complete review of all the ESI" on the phones to locate the responsive data.

A magistrate judge granted the Government's search warrant application for Dawkins' phones on October 6, 2017, and another granted the application for Code's phones on November 3, 2017. Each warrant authorized law enforcement personnel to review the ESI contained on the phones "for evidence, fruits, and instrumentalities" of the schemes with which Defendants were charged. Each warrant also specified the categories of evidence responsive to the warrant, and tracked the language in the applications regarding procedures for finding responsive evidence, authorizing a "complete review" of the seized ESI to determine whether particular data is responsive to the warrant if necessary.

The Government subsequently submitted an affidavit of an FBI agent describing how the Government actually performed the searches. The agent explained that, although the search warrants had permitted a broad review of the ESI, no such broad search actually occurred. Instead, for three of the phones, law enforcements extracted a copy of the contents of the phones using a program, "Cellebrite." Cellebrite then automatically divided the contents of each phone into categories like SMS Messages, Emails, and Voicemails, allowing law enforcement to search just those specific categories. Within the extracted categories, the agent stated that law enforcement focused on those that they believed were most likely to contain information regarding the target crimes: text messages, contacts, call logs, and voice messages. Within those categories, law enforcement generally used search terms to look for relevant items but on occasion conducted an individual review. For other categories of data, the agents conducted a cursory review to ensure that there was no relevant material. The agent stated that with respect

to the images category specifically, law enforcement only opened documents and spreadsheets, not photographs.

The fourth phone, which belonged to Code, was not compatible with Cellebrite and thus agents had to review it manually.  The agent personally conducted the manual review and reviewed only the text messages, contacts, documents, and spreadsheets on the phone.

B.      *Legal Standard*

The Fourth Amendment protects against searches unsupported by probable cause by mandating that a search warrant describe with particularity the place to be searched and the persons or things to be seized.  *United States v. Rosa*, 626 F.3d 56, 61 (2d Cir. 2010).  Probable cause is a "flexible, common-sense standard."  *Texas v. Brown*, 460 U.S. 730, 742 (1983).  "[O]nly the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause."  *Spinelli v. United States*, 393 U.S. 410, 419 (1969), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213 (1983).  "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. at 238.

The duty of the reviewing court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."  *Id.* at 238–39 (citing *Jones v. United States*, 362 U.S. 257, 271 (1960)) (internal quotation marks omitted).  "A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists."  *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993).

C.      *Discussion*

1.      The Search Warrants Were Supported by Probable Cause

Defendants argued that their use of their cell phones to make incriminating calls does not furnish probable cause to search their phones.  This argument is unavailing.  As the affidavits to the warrant applications stated, three of the phones that law enforcement agents searched were used to call and text people to further the target crimes.  The fourth was found on Dawkins' person while he was en route to a meeting with co-conspirators in the target crimes.  Based on these facts, the magistrate judges who issued the warrants were entitled to infer that the cell phones likely contained other evidence of the target crimes.  And as Judge Kaplan stated in a related case involving Defendants, regarding the exact same phones at issue here,

> [t]his conclusion reasonably reaches not just other forms of communication, but other forms of data that may be related to or embedded in such communications—in other words, contacts and call logs as well as documents or images that may have been embedded in or otherwise related to a communication made using the cell phone.

*United States v. Gatto*, 313 F. Supp. 3d 551, 558–59 (S.D.N.Y. 2018).  Suppression is not warranted on the basis of a lack of probable cause.

2.      The Search Warrants Were Not Overbroad

Next, Defendants argued that to the extent the warrants were supported by probable cause, they were nonetheless overbroad because they allowed law enforcement agents to review the full contents of the phones instead of specific places.

"The Fourth Amendment requires that warrants state with particularity the items to be searched and seized." *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 452 (S.D.N.Y. 2013).  The requirement serves several purposes:  "preventing general searches, preventing the seizure of objects upon the mistaken assumption that they fall within the magistrate's authorization, and preventing the issuance of warrants without a substantial factual basis.  *United States v. Young*, 745 F.2d 733, 759 (2d Cir. 1984).  To be sufficiently particularized under the Fourth

12

Amendment, a warrant must (1) identify the specific offense for which the police have

established probable cause, (2) describe the place to be searched, and (3) specify the items to be

seized by their relation to designated crimes.  *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir.

2017), *cert. denied*, 138 S. Ct. 2708 (2018).

   All of these requirements were met in the warrants for Defendants' phones.  The warrants

described the target crimes, identified the phones as the items to be searched, and specified the

types of data that would be seized from the phones, data that was also identified in the affidavit

as being particularly related to the target crimes.  The fact that the warrant authorized law

enforcement agents to access all the data on the phone does not automatically render it

overbroad.  As the Second Circuit has acknowledged, "it will often be impossible to identify in

advance the words or phrases that will separate relevant files or documents before the search

takes place, because officers cannot readily anticipate how a suspect will store information

related to the charged crimes."  *Id.* at 102.  Thus, "[b]y necessity, government efforts to locate

particular files will require examining a great many other files to exclude the possibility that the

sought-after data are concealed there."  *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013)

(quoting *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176 (9th Cir.

2010) (en banc) (per curiam)) (alteration in original).  Accordingly, the warrants granted to

search Defendants' phones were not overbroad.[3]

---

[3] The Government argued that even if Defendants' arguments were meritorious, suppression would not be warranted because law enforcement agents acted in good faith in relying upon the search warrants.  The Court agreed. "[E]vidence obtained pursuant to a warrant which later is found to have been issued without probable cause will be suppressed only if:  (1) the issuing judge abandoned his detached, neutral role; (2) the agent was dishonest or reckless in preparing the supporting affidavit for the wiretap order; or (3) the agents' reliance on the warrant was not reasonable."  *Bellomo*, 954 F. Supp. at 638.  There is no indication that any of these conditions were fulfilled in the issuance of the search warrants and conduct of the search.

For the aforementioned reasons, the Court DENIED Defendants' motion to suppress evidence obtained from searches conducted on their cell phones.  Defendants' motion to suppress all evidence derived from those searches was also denied.

## IV.   DEFENDANTS' MOTION FOR A BILL OF PARTICULARS

Defendants argued that they would be unable to adequately prepare for trial unless the government provided them with the following particulars:

1) Additional details concerning the financial aid the universities continued to award to the relevant student athletes under false pretenses, specifically, the dates and amounts of these financial awards, and the names of each student who received an award under false pretenses.

2) The names of the "others" in the indictment from whom Lamont Evans was alleged to have solicited and accepted bribes, in addition to a confidential witness.

3) The date in July 2017 wherein Emmanuel Richardson was alleged to have solicited an additional $15,000 bribe from Christian Dawkins.

4) The identities of others known and unknown who were alleged to have conspired with the defendants from 2016 up to and including September 2017.

Doc. 129 at 3.

"Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."  *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of

14

the specific acts of which he is accused." *United States v. Feola*, 651 F.Supp. 1068, 1132

(S.D.N.Y.1987), *aff'd*, 875 F.2d 857 (2d Cir.).  "It is not enough that the information would be

useful to the defendant; if the defendant has been given adequate notice of the charges against

him, the government is not required to disclose additional details about its case.  The court must

be cognizant of the fact that a bill of particulars confines the government's evidence at trial to the

particulars furnished." *United States v. Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985).

"Therefore, the proper test in deciding whether a bill of particulars should be required of the

Government is whether the bill of particulars is *necessary* for the defense, not whether it would

aid the defendant in his preparation." *United States v. Trippe*, 171 F. Supp. 2d 230, 240

(S.D.N.Y. 2001) (emphasis added).  "Whether to grant a bill of particulars rests within the sound

discretion of the district court," *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984), after

considering "the totality of the information available to the defendant—through the indictment,

affirmations, and general pre-trial discovery." *United States v. Thompson*, 2013 WL 6246489, at

*7 (S.D.N.Y. Dec. 3, 2013).

Defendants were not entitled to a bill of particulars. Given the level of detail that is

contained in both the criminal complaint and the superseding indictment, Defendants could not

claim that the charges alleged against them were so general that they did not advise them of the

specific acts of which they were accused.  Specifically, the complaint and indictment describe, in

detail, the alleged criminal interactions between Defendants and the various NCAA coaches that

were involved in the scheme.  These details include the dates when these meetings took place,

the amount of the bribes that were discussed and paid, and the approach that Defendants took to

identify and establish relationships with the coaches.  For example, the Indictments allege that

Code utilized his affiliation and former affiliation with different sports apparel companies in

15

order to identify corrupt coaches and assist Dawkins in developing relationships with them.  In addition, the discovery material which was available to Defendants, including hours of incriminating phone calls, served to further give notice to Defendants of the charges against them and prevented them from being surprised at trial.  Given the amount and type of information that was already available to Defendants, compelling the Government to provide the requested bill of particulars would have simply been helpful to Defendants' preparation for trial, not necessary.

Accordingly, Defendants' motion for a bill of particulars was DENIED.

## V.   DEFENDANTS' MOTION FOR ADDITIONAL DISCOVERY

Defendants also asked this Court to compel the government to produce certain warrants, and applications or affidavits supporting those warrants, that were issued to target the cell phones of Rashan Michel and Chuck Person, defendants in the related case of *United States v. Person and Michel*, 17 Cr. 683 (S.D.N.Y.) (LAP).  Defendants asserted that those materials were relevant to their defense, in part because they may be probative of the legality of the wiretaps the Government used in this case.

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure provides that:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:  (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

An item is deemed material if "it could be used to counter the government's case or to bolster a defense."  *United States v. Rigas*, 258 F. Supp. 2d 299, 306 (S.D.N.Y. 2003) (citing *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)).  The defendant has the burden to make a *prima facie* showing that the documents he seeks under Rule 16 are material.  *Id.* at 307.

Defendants failed to make a *prima facie* showing that any of the documents they sought were material to preparing their defense.  Additionally, there was no evidence that the Government intended to use the documents as part of their case-in-chief or that the documents were obtained from or belonged to Defendants.  Consequently, the Court DENIED Defendants' motion for additional discovery.[4]

## VII.   CONCLUSION

For the aforementioned reasons, the parties' motions were DENIED.  The Clerk of Court is respectfully directed to terminate the motions, Docs. 124, 125, 128, 132, 185.

Dated:      May 21, 2019
            New York, New York

                                          _____
                                          Edgardo Ramos, U.S.D.J.

---

[4] The Government sought to preclude Defendants from advancing an entrapment defense at trial.  At the pre-trial conference held on April 19, 2019, counsel for Dawkins confirmed that he did not intend to raise an entrapment defense at that time.  *See* Doc. 229 at 14:22–15:11.  Code did not intend to raise an entrapment defense either. Consequently, the Government's motion was DENIED as moot.