

HANEY LAW GROUP, PLLC
(248) 414-1470
steve@haneygroup.net

February 28, 2022

The Honorable Edgardo Ramos
United States District Judge
500 Pearl Street, Courtroom 619
New York, New York  10007-1312

    Re: United States v Evans et al
       Case Number:  17-cr-00684-ER
       Re: Christian Dawkins

Dear Judge Ramos:

As this Honorable Court is no doubt aware of the entirety of the facts and circumstance of this case, we will refrain from any recitation, but emphasize the facts most germane to the request now being made of this Court.

In July of 2017, during the midst of undercover efforts of a very poorly plotted federal bribery case, Federal agents moved operations to Las Vegas, Nevada. Ultimately, the trappings of Sin City were too much to handle for a number of the federally employed case agents, in fact almost all of the agents, as it was determined that 80% of the case agents assigned to the infamous college basketball bribery case had either committed crimes, or acted, by the Government's loose definition, "improperly".

In the Government's Motion in Limine, filed immediately prior to trial, it was referenced specifically that one subsequently fired case agent assigned to the operation, along with essentially the Officer in Charge of the entire mission, "misused FBI funds." The "misuse" was vaguely described that the agents were known to have gambled and obtained "certain food and beverages" during the performance of their duties as FBI agents. Not just in their professional capacity, but in direct connection with their undercover efforts associated with this case.

Certainly one would be naive to believe such lack of professional control was limited to ingesting a hot dog and a coke, or playing a penny slot with taxpayer dollars, but despite requests for specifics, the Government steadfastly refused to disclose the breadth of the FBI agents' gluttony, or provide any information other than vague generalities, which they couched as "alleged misconduct."

The Honorable Edgardo Ramos
United States District Judge
February 28, 2022
Page 2.

---

However, as of February 23rd, 2022, the conduct of one particular agent no longer remained "alleged", as confirmed by the U.S. Department of Justice;

## Federal Special Agent Pleads Guilty To Gambling With Government Funds

**LAS VEGAS** – An FBI Special Agent pleaded guilty yesterday to misusing government money to gamble at a Las Vegas casino.

Scott F. Carpenter (40), of New York, pleaded guilty to one count of conversion of government money. U.S. District Judge Gloria M. Navarro presided over the hearing and scheduled sentencing for May 18, 2022. At sentencing, Carpenter faces a statutory maximum penalty of one year in prison, supervised release, and restitution.

According to court documents, from July 27 to July 31, 2017, Carpenter — employed as a Special Agent with the FBI's New York City Field Office — and three other FBI agents traveled to Las Vegas to conduct an undercover operation. At the conclusion of the operation, Carpenter went to a casino's high limit room, where he gambled on blackjack with $13,500 belonging to the United States.
Acting U.S. Attorney Christopher Chiou for the District of Nevada and Special Agent in Charge James F. Boyersmith of the Department of Justice Office of the Inspector General, Miami Field Office (DOJ OIG) made the announcement.
This case was investigated by the DOJ OIG. Assistant U.S. Attorney Daniel R. Schiess is prosecuting the case.

In advance of trial, Defendants' implored this Court to allow Federal Agents, including FBI Special Agent Scott Carpenter, to be called as trial witnesses, not just for purposes of cross examination, but to address the scope of his involvement in other matters materially related to the investigation. An investigation, which was very self servingly claimed by the Government to have occurred at times and locations unrelated to "any aspect of the investigation", which based on the newly acquired evidence we now know is inaccurate.

Throughout the defense of this case, counsel was forced to essentially take the Government at its word that Special Agent Carpenter's conduct occurred at times and locations unrelated to "any aspect of the investigation". One can only fathom the psychology of an FBI Agent taking government money, during the middle of an undercover FBI investigation, occurring inside a Las Vegas Casino, walking into a casino's high-limit room replete with surveillance video, and gambling $13,500 of taxpayer dollars. Asking anyone, including this Honorable Court, or perhaps more importantly these Defendants, to presume such degeneracy would be limited to one

The Honorable Edward Ramos
United States District Judge
February 28, 2022
Page 3.

---

reckless act of brazen thievery is borderline preposterous. Further, based on the facts recently presented by the Department of Justice, it is more than reasonable to infer the criminal conduct of FBI agent Carpenter occurred on the same date and time, and the same location (the Las Vegas Casino) where the Defendants were engaged in the Government undercover operation.

Further, the fact the Special Agent was granted a misdemeanor plea, for stealing almost twice as much money as others in the case who are now forever saddled with felony convictions, begs the question whether the misdemeanor offering was gifted with conditions, or just the Government taking care of its own in a sense of misplaced justice. Certainly the Defense should be allowed at this point to know if Special Agent Carpenter provided cooperation as it related to the other agents in this same case, also admitted to have "acted improperly", and if the rampant dishonesty in Las Vegas was limited to self-indulgence, or did it logically spill over into the material acts of the FBI used by the Government to prosecute this matter.

In *United States v. Sager*, the Ninth Circuit explained, that "[t]o tell the jury that it may assess the product of an investigation, but that it may not analyze the quality of the investigation that produced the product, illogically removes from the jury potentially relevant information." 227 F.3d 1138, 1145 (9th Cir, 2000): see also *United States v. Howell*, 231 f.3d 615, 625 (9th Cir. 2000) (errors within police reports as to critical evidence, which constituted "textbook" impeachment evidence, raised the opportunity to attack the thoroughness and good faith of the investigation); *Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant[.]"); *Parrish v. City ofElkhari, md.*, 702 F.3d 997, 999 (7th Cir. 2012) (trial court's refusal to allow evidence that would cast doubt on the reliability of the investigation as a whole was legal error); *United States v. Smith*, 451 f.3d 209, 221 (4th Cir. 2006) ("The trustworthiness and competence of these [law enforcement] witnesses relate[s] directly to the charges in the indictment, and their credibility [is] crucial to the jury's assessment of the prosecution's case."); *Triestman v. U.S. Dep 't ofJustice, Drug Enf't Athnin.*, 878 F. Supp. 667, 671 ($.D.N.Y. 1995) ("The public interest in ensuring the integrity and the reliability of government investigation procedures is greater where there is some evidence of wrongdoing on the part of the government official."); *United States v. Poulsen*, 543 F. Supp. 2d 809, 811 (S.D.Ohio 2008) (rejecting the Government's argument that testimony undermining the reliability of the Government's investigation should be excluded as irrelevant); *United States v. Bagcho*, 151 F. Supp. 3d 60. 70-72 (D.D.C. 2015) (discussing admissibility of evidence to "impugn[] the government's i investigation" and "show [the agent's] bias.").

The Honorable Edward Ramos
United States District Judge
February 28, 2022
Page 4.

---

In this case, at trial, the Government was allowed to offer portions of several recordings of consensually monitored meetings involving two federal agents acting in an undercover capacity—including one of the agents involved in the July 2017 Las Vegas misconduct—and Defendant Christian Dawkins. However, given issues that arose during the aforementioned operation, the Government elected not to call the agents involved in that operation as witnesses at Defendants' trial, and successfully prevented the Defense from inquiring about the conduct of the agents involved in the Las Vegas operation, arguing that their "alleged misconduct" was irrelevant. With the criminal conviction of FBI Special Agent Scott Carpenter, the Defense moves that position should change, and this newly discovered evidence should warrant a new trial, and likely a bevy of *Brady* material.

It is clear the Government's strategic intent was to offer evidence which prejudiced Defendant Christian Dawkins as "necessary background" evidence, while concurrently secreting from the jury background evidence casting the investigation in an unflattering light. This case revolved around bribery of the coaches by the Defendants, and placing before the Jury the misconduct of the Defendants. Yet, in the same breath, the Government blatantly concealed from the jury the fact that its investigative team didn't just violate FBI rules, but also committed crimes, while arguing their criminal conduct was somehow irrelevant.

### 18 USC App Fed R Crim P Rule 33: Motion for a New Trial

Based on this newly acquired evidence, Defendant Christian Dawkins seeks a new trial. Rule 33 of the Federal Rules of Criminal Procedure authorizes the trial court to grant a new trial to a defendant when "required in the interest of justice."

It is acknowledged that when Rule 33 motions for a new trial are based upon newly discovered evidence, Judges have exercised their discretion with great caution. Their reluctance to grant new trials on the basis of newly discovered evidence reflects the legitimate interest in protecting the finality of judgments. However, to turn a blind eye to these new developments, not known at the time of trial, would be manifestly unjust to a man convicted without the opportunity to cross examine an FBI agent convicted of crimes directly associated and concurrent to the performance of his investigative duties. Duties and actions which were relied upon, and utilized, to secure the criminal conviction of Christian Dawkins.

The Honorable Edward Ramos
United States District Judge
February 28, 2022
Page 5.

_____

FED. R. CRIM. P. 33 states:

The court on motion of a Defendant may grant a new trial to him if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilt or within such further time as the court may fix during the 7-day period. Courts have recognized that rule 33 places new trial decisions within the trial judge's discretion. See, e.g., *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977) (citing *Hudson v. United States*, 387 F.2d 331 (5th Cir. 1976)).
*Berry v. Georgia*, 10 Ga. 511, 527 (1851).

Rule 33 further provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33(b) authorizes a district court to grant a new trial based on new evidence only if: (1) the evidence was discovered after trial; (2) the failure to discover the evidence was not due to a lack of due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial probably would produce a different result. *United States v. Barton*, 909 F.3d 1323, 1337 (11th Cir. 2018) *United States v. Street*, 570 F.2d 1, 2 (1st Cir. 1977); *United States v. Frye*, 548 F.2d 769 (8th Cir. 1977); *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976); *United States v. Stofsky*, 527 F.2d 237, 243 (2d Cir. 1975), cert. denied, 429 U.S. 819 (1976); *United States v. Bertone*, 249 F.2d 156, 160 (3d Cir. 1957); SA MOORE'S FEDERAL PRACTICE, supra note 2, at 1f 33.04[1]

In this case,

> (1) The evidence referenced was absolutely discovered after trial, and regrettably not disclosed by the Government, but instead by a Department of Justice press release;
> (2) The failure to discover the evidence at issue was not due to a lack of due diligence, and in fact was the opposite of the failure to exercise due diligence, as the evidence was known to the Government and rather clearly secreted throughout the prosecution of Defendant Dawkins to the extent the Government not only failed to call the corrupted FBI agents as witnesses, but blocked the Defense from calling an FBI agent now known to have engaged in criminal conduct;

The Honorable Edward Ramos
United States District Judge
February 28, 2022
Page 6.

    (3) The evidence at issue is not merely cumulative or impeaching, but FRE 403 relevant and germane to determine the scope of the pervasive and illegal conduct, and how that conduct permeated other aspects of the Government's investigation;

    (4) Evidence of a Special Agent of the FBI commiting a crime of theft, materially related and cocurrent to the performance of his investigative efforts is material to the question of both his conduct relating to other aspects of the investigation, as well as the other 80% of the corrupted investigative FBI team;

    (5) The evidence is such that a new trial probably would have produced a different result. Despite being prevented from calling any of the corrupted FBI agents, including an FBI agent now a convicted criminal, the Southern District of New York jury acquitted Christian Dawkins on the majority of charges. In fact, after a lengthy multi-day jury deliberation, the jury found Christian Dawkins not guilty on four of the six Counts charged.

It is more than reasonable to assume that had the Jury been availed with the newly discovered information/evidence that FBI Special Agent Carpenter "went to a casino's high limit room, where he gambled on blackjack with $13,500 belonging to the United States", that same jury, who acquitted Christian Dawkins on most of the charges against him, would have found him not guilty of the remaining two felony charges. Denying a new trial would be manifestly unjust and stand in contradiction to the law of the United States of America where "The trustworthiness and competence of these [law enforcement] witnesses relate[s] directly to the charges in the indictment, and their credibility [is] crucial to the jury's assessment of the prosecution's case."); *Triestman v. U.S. Dep't of Justice, Drug Enf't Athnin.*, 878 F. Supp. 667, 671 (S.D.N.Y. 1995).

For these reasons, Christian Dawkins respectfully requests this Honorable Court grant a new trial and set a new trial date expeditiously.

Sincerely,

/s/ Steven A. Haney
Steven A. Haney, Sr.
Attorney for Christian Dawkins
cc:    US Attorneys of Record (by ECF)